**Richard Dean SALEM, Petitioner,**

**v.**

**STATE OF NORTH CAROLINA and Donald Stahl, Sheriff of Mecklenburg County, Respondents.**

**No. C–C–73–283.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

April 8, 1974.

Howard J. Greenwald, Charlotte, N. C., for petitioner.

Richard N. League, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

Richard Dean Salem, petitioner, was convicted by a Mecklenburg County jury in April, 1972, of the crimes of possession of marijuana and assault by pointing a gun. He was sentenced to two consecutive six-month prison terms, and the convictions were upheld on appeal, 17 N.C.App. 269, 193 S.E.2d 755 (1973), cert. denied, 283 N.C. 259, 195 S.E.2d 692 (1973).

Salem seeks habeas corpus, alleging fundamental unfairness and lack of due process in the trial. [These allegations include error in the court's legal instructions to the jury; error in admission of evidence; and prejudicial conduct of the trial generally, including allowance of prejudicial efforts to associate defendant with Howard Mack Miller, who was currently the defendant (later acquitted on second trial) in a spectacular police homicide trial of about the same vintage and arising out of a very similar plain clothes raid.] The primary claim and the only one which will be discussed in any detail in this order is the alleged unfair exclusion of testimony which, if admitted, would have directly contradicted the testimony of the key eyewitness for the state.

The prosecution arose out of a "raid" by the Charlotte Police vice squad on a four-bedroom apartment at 1601 Eastcrest Drive at 1:50 a. m. on the morning of October 21, 1971, in Charlotte. The apartment was leased to Johnnie Kirkpatrick and Fred Mauney. Salem was living part of the time in the apartment in the bedroom referred to as bedroom "C" under an arrangement with the lessees. On the night in question he and his girl friend, Nancy, and her little daughter were spending the night there.

Salem testified that about 1:30 in the morning he and Nancy were asleep in bedroom "C." Salem had been asleep a couple of hours. He heard noises in the hall; he rolled over and picked up his 38 caliber pistol off the floor; the door was "busted open"; some men in plain clothes entered the room; Salem pointed his gun at them. He says that he soon recognized one of them as Lt. Stroud of the vice squad and lowered his gun when he realized the invaders were police instead of a "bunch of drunks."

The officers had a valid warrant to search the apartment of Kirkpatrick and Mauney for violations of the laws respecting marijuana; they found marijuana in the apartment and charged Kirkpatrick and Mauney as well as Salem with marijuana law violations. [Salem's marijuana conviction is not involved in this proceeding.]

Officer Ensminger, who was in charge of the raid, testified that he and fellow officers went to the apartment for the search; that the front door ws unlocked when they arrived; that they announced their presence as officers to search the apartment; that they tried the door of bedroom "C" and found it locked and

then, in a minute or so, kicked the door in and entered the bedroom; that Salem picked up the pistol and pointed it at the officer, who drew his own gun, announced himself as a police officer, and had to tell Salem two or three times to drop the gun. He further said that Salem did not really drop the gun but that Officer Howell had to take it away from Salem. Howell testified that he took Salem's gun from him.

There was thus a conflict between Salem on the one hand and Officer Ensminger and Officer Howell on the other hand about how long Salem held the gun on Ensminger, and whether Salem put the gun down as soon as he knew or should have known that the invaders were police instead of drunks or burglars.

John G. Walker and Frank Walker were Mecklenburg County attorneys who had represented the defendant Fred Woodrow Mauney at his preliminary hearing in the North Carolina district court, though not at the trial in Superior Court, on the marijuana charges. (Mauney was represented in Superior Court by Attorney Clayton Selvey.)

Both Frank and John Walker were called in Superior Court as witnesses on behalf of the defendant Salem for the purpose of testifying that Officer Ensminger had told a different story when they interviewed Ensminger in the early stages of the case. An affidavit of Frank Walker, submitted with the habeas corpus petition, indicates that Officer Ensminger within a day or two following the raid told him that Salem had voluntarily put the gun down as soon as he had been told two or three times that the invaders were police, and that he did not have to be verbally threatened or assaulted. There were other discrepancies as to which the Walkers were prepared to testify regarding Ensminger's testimony.

When the Walkers were called to testify the judge excused the jury and listened to objections by counsel for Mauney to the effect that allowing Walker to testify about his conversations with the police officer would violate Mauney's attorney-client privilege. The trial judge sustained the objection to the offer of evidence and would not even allow counsel to have the testimony put into the record for the purpose of showing what the witness would have said if he had been allowed to testify.

The state conceded in the Court of Appeals that this ruling by the trial court was error; the Attorney General simply contended that the error was not prejudicial (Court of Appeals brief of the state, pages 16, 17 and 18).

Petitioner contends that this error was so gross as to be an unconstitutional denial of fundamental fairness, Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960). He also contends that it was a denial of his rights to offer evidence, to confront his accusers, and to defend himself against the charges.

I agree on both counts. To deny a criminal accused the right to offer evidence that the testimony of his accusers is false is to fly in the face of all concepts of fairness and presumed innocence. The testimony went to the heart of the case. Refusal to allow the impeaching testimony denied the defendant his only chance to discredit the prosecution witnesses on the most crucial fact in issue.

Moreover, the judge's ruling effectively shackled the defense and blocked the most valuable evidence he could have offered to support his own testimony and impeach and contradict his accusers.

"The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process.

. . . . . .

"Few rights are more fundamental than that of an accused to present witnesses in his own defense."

Chambers v. Mississippi, 410 U.S. 284, 294, 302, 93 S.Ct. 1038, 1045, 35 L. Ed.2d 297 (1973).

Under these peculiar circumstances, where Salem's guilt (if any) depended

on the promptness of his recognition of the intruding plain-clothesmen as officers, and the reasonableness of his behavior pending such recognition, it is obvious that refusal to allow such telling testimony by such presumably reliable witnesses is a denial of the constitutional right of Salem to "present witnesses in his own defense." Even though it was not "direct" evidence of innocence, it was compelling evidence to discredit the accusers.

It is therefore ordered that Salem's conviction of assault is invalid and that he be released from custody upon completion of his sentence on the marijuana charge. Unless the state authorities notify this court by May 15, 1974, of their intention to re-try Salem on the charge of assault with a gun, they will be restrained from trying him on that charge again.