[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brunson*, Slip Opinion No. 2022-Ohio-4299.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

Slip Opinion No. 2022-Ohio-4299

THE STATE OF OHIO, APPELLEE, *v.* BRUNSON, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Brunson*, Slip Opinion No. 2022-Ohio-4299.]

*Criminal law—Waiver of attorney-client privilege—Sixth Amendment right to confrontation—R.C. 2929.12(D)(5)—Fifth Amendment right to remain silent—Codefendant who became a state witness pursuant to proffer agreement did not voluntarily waive his attorney-client privilege when state disseminated to all parties during discovery recording of conversation between codefendant and his attorney, because codefendant and his attorney believed they were having private conversation in police-station interview room when recording was made—Codefendant's suppression-hearing testimony did not reveal substance of privileged communications with his attorney and therefore did not constitute voluntary waiver of his attorney-client privilege—Defendant failed to establish a violation of his Sixth Amendment right to confrontation because he did not demonstrate reasonable probability that but for his inability to cross-examine*

*codefendant using recording of attorney-client privileged communication between codefendant and his counsel, result of defendant's trial would have been different—Trial court erred in considering defendant's decision to waive allocution and remain silent at sentencing hearing in its evaluation of defendant's lack of remorse under R.C. 2929.12(D)(5) when defendant pleaded not guilty to offenses with which he was charged and exercised his right to jury trial, but error did not affect sentence imposed, because defendant's sentence would have been the same given other factors trial court considered under R.C. 2929.12(D)—Judgment affirmed.*

(No. 2020-1505—Submitted January 25, 2022—Decided December 5, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 107683, 2020-Ohio-5078.

_____

**FISCHER, J.**

{¶ 1} Appellant, Nigel J. Brunson, appeals the judgment of the Eighth District Court of Appeals affirming his convictions and sentence. Brunson challenges his convictions based on his inability to cross-examine Garry Lake, a codefendant and a witness for appellee, the state, about a statement Lake made to his attorney that was recorded by the state and turned over to the defendants during discovery ("the recorded statement"). Brunson challenges his sentence based on the trial court's finding that his choice to waive allocution and remain silent at sentencing demonstrated a lack of remorse. We accepted Brunson's appeal on three of his propositions of law relating to the attorney-client privilege and the trial court's consideration of a defendant's silence at sentencing. *See* 161 Ohio St.3d 1450, 2021-Ohio-534, 163 N.E.3d 581.

{¶ 2} We reaffirm our prior holdings that a person waives the attorney-client privilege with regard to direct communications with his or her attorney either by expressly consenting to the waiver or by voluntarily revealing the substance of

the privileged communications in a nonprivileged context. *See Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, paragraph one of the syllabus; *State v. McDermott*, 72 Ohio St.3d 570, 651 N.E.2d 985 (1995), paragraph one of the syllabus; R.C. 2317.02(A). We agree with the lower courts' determinations that Lake did not waive his attorney-client privilege in this case.

{¶ 3} We also hold that even though there may be circumstances in which the attorney-client privilege yields to a defendant's right to confrontation, those circumstances do not exist in this case. But even if they did, Brunson has not demonstrated a reasonable probability that the result of his trial would have been different but for his inability to utilize the recorded statement to cross-examine Lake.

{¶ 4} Additionally, we hold that a trial court errs in its evaluation of a defendant's lack of remorse when it considers that defendant's decision to waive allocution and remain silent at sentencing if the defendant pleaded not guilty and exercised his or her right to a jury trial. While the trial court erred when it considered Brunson's decision to waive allocution and remain silent in determining whether he lacked remorse, the record demonstrates that the error was not prejudicial.

{¶ 5} Therefore, we affirm the judgment of the Eighth District Court of Appeals.

## I.  GENERAL BACKGROUND

{¶ 6} This case involves the prosecution of Brunson and four codefendants, Anita Hollins, Dana Thomas, Dwayne Sims, and Lake, for their alleged involvement in a robbery and shooting at the Cooley Lounge in Cleveland, which resulted in the death of a bartender. We provide a general background of the case, focusing on Brunson, and include additional facts relating to the attorney-client-privilege and sentencing issues in later sections.

## A. Brunson is indicted for robbery and murder at the Cooley Lounge

{¶ 7} During a robbery of the Cooley Lounge, three men assaulted and robbed the bar's patrons and shot and killed the bartender. The first two men had ordered one drink from the bar to share. They were joined later by a third man, who also shared the drink and then discarded the cup into the trash. The three men then proceeded to assault and rob the bar's patrons, kicking one and throwing another to the ground. Video surveillance footage shows that the third man led the bartender into a back room and shot her twice; it also shows the first man shooting her again before fleeing the scene.

{¶ 8} Law enforcement's investigation led the state to indict Brunson for numerous felony offenses, including aggravated murder, murder, aggravated robbery, kidnapping, felonious assault, and aggravated burglary. The state also indicted Hollins, Thomas, Sims, and Lake for offenses related to the incident. Brunson, Hollins, Thomas, and Sims pleaded not guilty to the offenses. Lake, however, accepted the state's plea deal, proffered a statement, and identified his codefendants as participants in the crimes.

{¶ 9} The state provided the defendants with discovery that included a copy of the recording of Lake's proffer statement and his identifications of the codefendants. The recording also captured a private conversation between Lake, his counsel, and his counsel's investigator—a fact that was unknown to Lake and his counsel and one that would become relevant during later proceedings.

## B. Suppression-hearing testimony raises attorney-client-privilege issues

{¶ 10} Sims moved to suppress Lake's identification of the codefendants as participants in the crimes. At the suppression hearing, the state's questioning of Lake and of the detective who showed Lake the photos of his codefendants for identification purposes raised concerns regarding Lake's attorney-client privilege. The answers elicited by the state arguably revealed information about discussions that were had between Lake and his attorney and between Lake's attorney and the

detective concerning Lake's knowledge of the crime. However, Lake was not cross-examined about his attorney-client privilege; rather, the issue was addressed off the record after the suppression hearing.

{¶ 11} The day after the suppression hearing, the trial court, the state, and counsel for each of the defendants went on the record to discuss Lake's attorney-client privilege. Brunson and his codefendants questioned not only whether Lake had waived his attorney-client privilege at the suppression hearing but also whether the recorded statement, i.e., the state's recording of Lake's private conversation with his counsel and his counsel's investigator during his proffer discussions, which the state provided to all defendants in discovery, could be used to cross-examine Lake at trial. Brunson and his codefendants argued that they should be allowed to use the recorded statement as impeachment evidence pursuant to their Sixth Amendment right to confrontation.

{¶ 12} Lake's counsel argued against waiver, testifying before the trial court that he had no intention of waiving Lake's privilege at any time, nor had he been authorized by Lake to waive Lake's attorney-client privilege. The trial-court judge watched the recording and, after significant discussion with everyone involved and consideration of the issue, determined that Lake's attorney-client privilege had not been waived. The court denied the motion to suppress but admitted the recording in its entirety, under seal, for future appellate review.

### C. The jury finds Brunson guilty

{¶ 13} The matter proceeded to a joint trial. The state presented recordings of Brunson's phone calls from jail in which he implicated himself, Hollins, Thomas, Sims, and Lake in the crimes. The state also offered DNA evidence linking Thomas and Brunson to the discarded cup from the bar. And based on the weight and height of the male defendants, one detective testified that she believed, based on the surveillance video, that Brunson was the first man to enter the bar, that he struck one of the patrons, and that he fired the last shot at the bartender.

**{¶ 14}** Lake testified for the state; he identified Brunson and Hollins as the drivers on the evening in question. He claimed that he was sleeping in the car and did not participate in the robbery. Though Lake was cross-examined extensively during the trial, none of the defendants explicitly raised the attorney-client-privilege issue again, despite it being mentioned by the trial court and by Lake's attorney.

**{¶ 15}** After the presentation of the evidence and closing arguments, the jury found Brunson guilty of 22 felony counts, including 3 counts of aggravated murder, 1 count of murder, 6 counts of aggravated robbery, 7 counts of kidnapping, 3 counts of felonious assault, and 2 counts of aggravated burglary.

### D. The trial court sentences Brunson to life in prison

**{¶ 16}** At sentencing, Brunson remained silent and waived his right to allocute. The trial court considered Brunson's silence and his decision not to allocute to be a demonstration of his lack of remorse. After merging allied offenses of similar import, the trial court sentenced him to life imprisonment without the possibility of parole for aggravated murder with three years for the firearm specification, seven years for each of the five counts of aggravated robbery, six years on the felonious-assault count with three years for the firearm specification, and seven years for the kidnapping count. The court ran some of the sentences consecutively, finding that "consecutive service [was] necessary to protect the public from future crime" or to punish Brunson in proportion to the seriousness of his conduct.

### E. The Eighth District affirms Brunson's convictions and sentence

**{¶ 17}** Brunson appealed to the Eighth District. He alleged that Lake waived his attorney-client privilege, either through the recorded statement or through his testimony at the suppression hearing. Brunson maintained that he should have been allowed to question Lake about the recorded statement on cross-examination under his Sixth Amendment right to confrontation and under *Brady v.*

*Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brunson also alleged that the trial court improperly considered his silence at sentencing.

{¶ 18} The Eighth District found that the trial court did not abuse its discretion by denying Brunson's request to use the recorded statement to impeach Lake on cross-examination. The court of appeals determined that Lake's testimony at the suppression hearing did not constitute a waiver of his attorney-client privilege, because the record did not clearly establish that Lake testified about the contents of the recorded statement. 2020-Ohio-5078, ¶ 31. The court did not address Brunson's veiled assertion that Lake waived his privilege prior to the suppression hearing, nor did it address Brunson's Confrontation Clause and *Brady* arguments.

{¶ 19} The Eighth District also held that the trial court properly considered Brunson's silence as a demonstration of his lack of remorse under R.C. 2929.12(D)(5). 2020-Ohio-5078 at ¶ 75. Additionally, the appellate court seems to have inferred that even if the trial court erred in considering Brunson's silence in its R.C. 2929.12(D)(5) analysis, the result would not have been any different since the trial court considered multiple sentencing factors, including Brunson's lengthy criminal record, his commission of the offenses while on postrelease control, and the physical and emotional harm the victims suffered as a result of the offenses.

{¶ 20} Thus, the appellate court affirmed.

## II. PROPOSITIONS OF LAW

{¶ 21} We accepted Brunson's appeal on three of his propositions of law, 161 Ohio St.3d 1450, 2021-Ohio-534, 163 N.E.3d 581, including his first proposition of law, which concerns the trial court's consideration of a defendant's silence at sentencing:

[First Proposition of Law:] A trial court violates a defendant's right to remain silent, in violation of both the Ohio Constitution and the U.S. Constitution, when it relies upon that silence as part of the basis for imposing a sentence of life without the possibility of parole.

We also accepted Brunson's appeal on his third and fourth propositions of law, which relate to the attorney-client privilege and concern a defendant's ability to use privileged statements during cross-examination:

[Third Proposition of Law:] A witness waives attorney-client privilege with respect to a subject when he or she offers testimony on the same subject.

[Fourth Proposition of Law:] The attorney-client privilege of a State's witness must yield to a defendant's right to present a full defense and confront his accuser when the information that is purportedly the subject of that privilege is *Brady* material in the possession of the State.

{¶ 22} We review these propositions of law out of order.

### III. ANALYSIS

### A. Attorney-client privilege

### 1. Brunson forfeited all but plain error

{¶ 23} In his third proposition of law, Brunson asserts that a witness waives the attorney-client privilege on a subject when that witness offers testimony on that same subject. Brunson makes no argument about Lake's testimony at the suppression hearing. Rather, Brunson focuses solely on Lake's alleged failure to assert his privilege and Lake's alleged waiver of the privilege based on his failure

to object to the dissemination of the recorded statement—two issues that have nothing to do with a witness's testimony. It is only the state that preemptively discussed Lake's testimony at the suppression hearing, and the state maintains that Lake did not waive his attorney-client privilege through his testimony.

{¶ 24} This court is not obligated to formulate legal arguments on behalf of the parties, because acting as an appellate court, we preside as arbiters of the legal questions presented and *argued by the parties*. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19. Although Brunson did not raise the argument that Lake waived his attorney-client privilege through his testimony at the suppression hearing, the state did raise the issue and Brunson addressed it briefly at oral argument. Therefore, we address it in our resolution of the waiver issue.

{¶ 25} While we recognize that Brunson raised the issue whether Lake waived his attorney-client privilege immediately prior to opening statements, he did not renew the motion during Lake's examination at trial. Thus, he has forfeited all but plain error. *See State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986) (an order denying a motion in limine is a preliminary ruling about an evidentiary issue that is anticipated, and the issue is preserved only by a timely objection when the issue is actually reached during the trial); *State v. West*, ___Ohio St.3d___, 2022-Ohio-1556, ___N.E.3d___, ¶ 22 (appellate court applies plain-error review when the defendant has forfeited the right to assert an error on appeal). To prevail on this issue, Brunson must demonstrate "a reasonable probability" that the trial court's error in denying his request to cross-examine Lake about the recorded statement "resulted in prejudice," such that "the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." (Cleaned up.) *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 130.

### 2. We review de novo whether Lake waived his attorney-client privilege

**{¶ 26}** We acknowledge that a trial court has broad discretion to determine the admissibility of evidence in a case, so long as that discretion is exercised "in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). And determining whether a statement may be used to cross-examine a witness is an evidentiary issue. But the trial court's discretion comes into play only when it is *balancing* whether *admissible* evidence may be used at trial. *See State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22, 30. A trial court's discretion does not extend to determining whether a statement is protected by the attorney-client privilege; that is a question of law. *See Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35 (a trial court does not have discretion when making a determination of law). Thus, we review de novo whether Lake's recorded statement is protected by the attorney-client privilege, and we emphasize that the trial court's discretion comes into play only if the evidence would be lawfully admissible.

### 3. Attorney-client privilege is governed by statute and the common law

**{¶ 27}** " 'The attorney-client privilege is one of the oldest recognized privileges for confidential communications.' " *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 16, quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). It encourages " 'full and frank communication' " between clients and their attorneys to allow attorneys to be fully informed so that they may provide sound legal advice. *Id.* at ¶ 16, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584.

**{¶ 28}** The attorney-client privilege is governed by statute, R.C. 2317.02(A), and for situations that are not addressed in the statute, the privilege is governed by the common law. *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18. R.C. 2317.02(A) covers

testimonial privilege, and the common-law attorney-client privilege "protects against any dissemination of information obtained in the confidential relationship." *Id.* at ¶ 26, quoting *Am. Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348, 575 N.E.2d 116.

{¶ 29} Though R.C. 2317.02(A) expressly covers when an *attorney* may testify about attorney-client-privileged statements, we have held that the statute "provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Jackson*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, at paragraph one of the syllabus (following *McDermott*, 72 Ohio St.3d 570, 651 N.E.2d 985); *see also Jackson* at ¶ 21-26 (Lanzinger, J., concurring in judgment only) (noting that the plain language of the statute relates only to the attorney's "testifying on issues covered by the attorney-client privilege" and does not address the client). Thus, under this court's decision in *Jackson*, R.C. 2317.02(A) applies to all direct communications between a client and his or her attorney, and the attorney-client privilege can be waived only when (1) the client has provided express consent to waive the privilege or (2) the client has voluntarily revealed the substance of the attorney-client communications in a nonprivileged context, such as by voluntarily testifying on the same subject. *See Jackson* at paragraph one of the syllabus, ¶ 12; *McDermott* at paragraph one of the syllabus, 574; R.C. 2317.02(A).

{¶ 30} Accordingly, the direct communications between Lake and his attorney are protected by the attorney-client privilege under R.C. 2317.02(A). When Lake gave his proffer statement to police, the recording of his proffer also captured a direct and private communication between Lake, his counsel, and his counsel's investigator. Thus, it is clear that the waiver issue in this case relates to a direct communication between Lake and his counsel that is governed by R.C. 2317.02(A). For Lake to have waived his attorney-client privilege, he would have had to have provided express consent to waive the privilege or have voluntarily

revealed "the substance" of the communications with his counsel in a nonprivileged context.  R.C. 2317.02(A)(2); *see Jackson* at paragraph one of the syllabus.

### 4. *Lake did not waive his attorney-client privilege*

{¶ 31} Brunson's argument that Lake waived his attorney-client privilege rests solely on the assertion that Lake voluntarily revealed attorney-client-privileged communications.  Whether a client "voluntarily reveals the substance of attorney-client communications in a nonprivileged context" under R.C. 2317.02(A) requires us to answer three questions: (1) Did the client speak in a "nonprivileged context"? (2) Did the client voluntarily reveal information? (3) If so, was the disclosure about the same subject as the privileged communications?

### a. *The recorded statement is protected by the attorney-client privilege*

{¶ 32} After reviewing the facts surrounding the recorded statement, we hold that Lake did not waive his attorney-client privilege, because the communication between Lake and his attorney that was recorded and disseminated to the other parties was not made in a "nonprivileged context."

{¶ 33} "Nonprivileged context" is not a defined term in the statute.  *See* R.C. 2317.02.  However, it is apparent that the term refers to a context in which the client reveals information to individuals outside the attorney-client relationship, i.e., to persons who are not the client's attorney and who are not acting as the attorney's agents.  *See Foley v. Poschke*, 137 Ohio St. 593, 595, 31 N.E.2d 845 (1941); *Bowers v. State*, 29 Ohio St. 542, 546 (1876); Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges*, Section 6.8.1 (4th Ed.2022).  The record demonstrates that Lake and his counsel believed that they were having a private conversation in an interview room at the police station, outside the presence of others.  Though Lake and his counsel knew that the interview of Lake by police in that room was being recorded, Lake's counsel did ask to speak *privately* with his client.  This request caused police to leave the room. It is this request and the police's following through with this request that clearly

demonstrate that Lake and his counsel believed they were having a private conversation outside the presence of others, even though Lake's counsel forgot to ask police to stop the recording before they left the interview room. Thus, it is apparent that the conversation between Lake and his counsel that was recorded occurred within the context of the attorney-client privilege.

{¶ 34} Brunson seems to argue that Lake's knowledge of the *possibility* that the conversation he had with his attorney in the interview room could be recorded and his decision to speak with his attorney in that room despite that knowledge are enough to establish that Lake revealed privileged communications voluntarily in a nonprivileged context. He is mistaken. Lake was in the state's custody, so moving to another room or speaking elsewhere was an unlikely possibility. The police left the interview room at the request of Lake's attorney so that he and his client could speak privately. There is no reason for this court to conclude that Lake somehow inadvertently waived his attorney-client privilege because there was *a possibility* that the state could be listening to what was meant to be a private conversation between him and his attorney. Such a holding would inhibit attorneys and their clients from engaging in open and honest conversations in places where they expect privacy but where they could possibly be recorded, which nowadays could be anywhere.

{¶ 35} Furthermore, we have expressly declined on multiple occasions to recognize the doctrine of implied waiver of the attorney-client privilege for communications falling under R.C. 2317.02(A). *See Jackson*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, at ¶ 13; *Squire, Sanders & Dempsey*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 44. And we decline to do so again today. Arguments alleging implicit waiver of the attorney-client privilege are not meritorious for communications protected under R.C. 2317.02(A). Thus, we reject Brunson's argument that the failure by Lake and his counsel to take all steps necessary to ensure absolute privacy to preserve Lake's attorney-client

privilege was sufficient to constitute a waiver of Lake's attorney-client privilege. We agree with the lower courts that Lake did not waive his attorney-client privilege by speaking with his counsel in a room where he had an expectation of privacy.

    *b. Lake did not waive his attorney-client privilege at the suppression hearing*

**{¶ 36}** Additionally, we hold that Lake did not waive his attorney-client privilege by voluntarily revealing the substance of attorney-client communications in a nonprivileged context.

**{¶ 37}** Lake testified in a nonprivileged context at a public hearing on Sims's motion to suppress. Thus, we consider whether Lake's testimony at the suppression hearing was given voluntarily and whether he revealed the substance of attorney-client-privileged communications during his testimony, thereby opening the door for Brunson to cross-examine him at trial using the recorded statement. We find that while Lake's suppression-hearing testimony was voluntarily given, he did not reveal the substance of attorney-client-privileged communications in his testimony and, therefore, did not open the door to the admission of the recorded statement.

    (1) Lake's testimony was voluntarily given

**{¶ 38}** The General Assembly did not define what it means for a client to "voluntarily" reveal privileged statements in R.C. 2317.02(A). But in its everyday use, "voluntarily" means generally that the decision is one's own choice. *See Webster's Third New International Dictionary* 2654 (2002), (defining "voluntarily" as "of one's own free will"); *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8, quoting *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17 (undefined statutory terms are given their " 'plain and ordinary' " meaning).

**{¶ 39}** Here, we must decide whether Lake gave his suppression-hearing testimony of his own volition. The state argues that Lake's testimony was not voluntarily given, because his testimony was elicited on direct examination during

the suppression hearing. We have generally found that when a witness responds to questions about privileged communications during examination in a legal proceeding, those statements are not voluntarily made. *See Harpman v. Devine*, 133 Ohio St. 1, 6, 10 N.E.2d 776 (1937) (plaintiff's testimony on cross-examination was not voluntarily given, because he was obliged to answer the questions or be in contempt of court). *Compare Baker v. Indus. Comm.,* 135 Ohio St. 491, 497, 21 N.E.2d 593 (1939) (plaintiff who voluntarily testified on direct examination about communications with his physician did not waive the physician-patient privilege). A client voluntarily reveals attorney-client-privileged communications when the client provides the information *by choice*, not when the information is elicited through questioning. *See Meyers, Roman, Friedberg & Lewis v. Malm*, 183 Ohio App.3d 195, 2009-Ohio-2577, 916 N.E.2d 832, ¶ 23 (8th Dist.) (defendant voluntarily waived his attorney-client privilege when he affirmatively asserted during cross-examination, without being asked, that he had acted on the advice of counsel); *see also Maddox v. Greene Cty. Bd. of Commrs.*, 2nd Dist. Greene No. 2013-CA-71, 2014-Ohio-1541, ¶ 12 (board waived the attorney-client privilege when it voluntarily made a factual assertion in a pleading that it had acted on the advice of counsel). But the context in which those statements are made must also be considered.

{¶ 40} Some of the facts in this case generally support the conclusion that Lake did not voluntarily provide attorney-client-privileged information through his suppression-hearing testimony. Lake testified and could have been held in contempt of court if he had failed to answer the questions asked of him. *See* R.C. 2705.02(C) and (E). Lake had no control over the questions being asked of him since he was the state's witness and the prosecutor was not his attorney. *See Tandon v. Tandon*, 7th Dist. Jefferson No. 99 JE 36, 1999 WL 1279162, *3 (Dec. 27, 1999) (cross-examination testimony is not voluntarily given, because the party being questioned and his or her counsel do not have control over the questions being

asked and the information being elicited). And Lake's testimony regarding his attorney-client privilege was provided in direct response to the state's questions, not through voluntary assertions Lake made at the hearing:

> [Prosecutor:] Okay. And before you had this — this interview on April 6th that we have here on the screenshot, State's 1, did you let your attorney know what you were going to tell law enforcement on that day?
>
> [Lake:] I let him know what I was going to tell them?
>
> [Prosecutor:] Correct.
>
> [Lake:] No.
>
> [Prosecutor:] All right. Did you ever indicate that you knew the names or identification or individuals that committed this crime on October 24th, 2016?
>
> [Lake:] You said did I tell them who the names was?
>
> [Prosecutor:] Correct.
>
> [Lake:] Yes.

This questioning tends to support the argument that Lake's suppression-hearing testimony was not voluntarily given.

{¶ 41} However, we must also consider that Lake was the state's witness under the terms of his plea agreement. Though he may not have wanted to testify in this case, Lake chose to do so. Additionally, Lake's counsel, who was present at the hearing, did not object to the state's line of questioning. Though it is a close call under the facts of this case, we find that the evidence supports the conclusion that Lake's testimony at the suppression hearing was voluntarily given.

(2) Lake's answers to the state's questions did not reveal the substance of the recorded statement

{¶ 42} Since Lake's testimony was voluntarily given, we must determine whether it revealed "the substance of attorney-client communications," R.C. 2317.02(A)(1). We note at the outset that while the recorded statement was made a part of the trial-court record, the recorded statement is not in the record before this court. It is the duty of the appellant to ensure that the appellate court has the record on appeal. *See* App.R. 10(A). Because we do not have access to the recorded statement, we can base our analysis only on the discussion of the recorded statement that occurred at the suppression hearing and immediately prior to trial. And based on that analysis, we conclude that Lake did not reveal the substance of his attorney-client-privileged communications during his suppression-hearing testimony and, therefore, did not open the door for Brunson to use the recorded statement against him during cross-examination at trial.

{¶ 43} Lake made two statements during his suppression-hearing testimony that may have concerned privileged communications with his attorney. First, Lake answered "No" to the state's question about whether he told his attorney what he would tell police on the day of the proffer. Second, Lake testified that he told "them" the names of the individuals involved in the crime. We cannot discern from this record whether "them" refers to Lake's counsel or to law enforcement. *See* 2020-Ohio-5078 at ¶ 31. We acknowledge that there is a strong possibility that Lake was referring to his counsel and his counsel's investigator when he said "them," especially given the state's belief that Lake's counsel had revealed to detectives the persons Lake had identified as the perpetrators in this case. But we cannot be sure. Thus, we review whether the recorded statement included a discussion between Lake and his attorney about what Lake planned on telling law enforcement when making his proffer.

**{¶ 44}** Without having the recorded statement in the record before us, or there having been some objection to or cross-examination of Lake on the line of questioning pertaining to the recorded statement, we cannot say that Lake's suppression-hearing testimony revealed the "substance" of the recorded statement. We know only that the discussion between Lake and his attorney in the four-minute-long recorded statement related to the incident at the Cooley Lounge and concerned Lake's proffer. Lake's attorney admitted that the state's questions "had to do with what Mr. Lake shared with" him, but we have no idea which questions were related specifically to the recorded statement. Therefore, we reject Brunson's assertion that Lake waived his attorney-client privilege at the suppression-hearing, because he did not reveal the substance of the recorded statement in his testimony.

**{¶ 45}** Additionally, we make clear that even though there was inconsistent testimony concerning whether Lake's attorney had informed law enforcement about matters discussed between him and his client, which Lake's attorney denies doing, any such disclosures do not waive Lake's attorney-client privilege. *See Jackson*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, at paragraph one of the syllabus; *State v. Doe*, 101 Ohio St.3d 170, 2004-Ohio-705, 803 N.E.2d 777, ¶ 15 ("The attorney-client privilege belongs solely to the client—not the attorney"). Counsel may reveal attorney-client-privileged communications only with the *express consent* of the client or after the client *voluntarily reveals* the substance of privileged communications in a nonprivileged context. We have no evidence that either occurred here; rather, the evidence before us supports the conclusion that neither situation occurred. So Lake's counsel's statements to law enforcement also do not support waiver.

**{¶ 46}** Therefore, we conclude that Lake did not waive his attorney-client privilege through his testimony at the suppression hearing and, therefore, did not open the door for Brunson to use the recorded statement during cross-examination of Lake at trial.

### 5. Assertion of Lake's attorney-client privilege

**{¶ 47}** Brunson also argues that Lake's attorney-client privilege was not preserved because the state, not Lake, asserted it. This argument is without merit.

**{¶ 48}** There is no doubt that the attorney-client privilege belongs to Lake, *see Doe* at ¶ 16, and that it is his privilege, not the government's, to assert, *see United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir.1994). But it is a mischaracterization to say that in this case only the state asserted Lake's attorney-client privilege and defended it when challenged.

**{¶ 49}** Lake's counsel, once apprised of the issue, argued that Lake did not waive his attorney-client privilege with regard to the recorded statement and that Lake did not waive the privilege through his suppression-hearing testimony. Both Lake's counsel and the state argued against waiver, and Lake's counsel provided sworn testimony in support of his client's position. *See Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976) (the *party* who seeks to exclude testimony based on the attorney-client privilege has the burden of proving that the privilege was not waived). Thus, the privilege was properly asserted.

**{¶ 50}** But even assuming arguendo that Lake's attorney could not assert the attorney-client privilege on behalf of his client and that it was error for him to do so, it is apparent that Brunson not only forfeited the error but invited it. While it is true that Lake did not expressly assert his attorney-client privilege at the suppression hearing, no one raised the issue at the suppression hearing during Lake's examination, while Lake's counsel was still present. And when the issue came up again prior to trial and Brunson was provided with an opportunity to clarify this issue, he did not call Lake to testify or argue that he should testify on the issue. Rather, Brunson's codefendant Sims called Lake's attorney to testify regarding the attorney-client-privilege issue. So, to the extent that allowing Lake's counsel to assert the privilege without Lake being present was error, it was invited. *See Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus (a

party is not permitted to take advantage of an error that he invited or induced the court to make). Thus, Brunson's argument challenging the assertion of Lake's attorney-client privilege is without merit.

## B. Right to confrontation

{¶ 51} In his fourth proposition of law, Brunson argues that even if Lake did not waive his attorney-client privilege when the state disseminated the recorded statement as evidence under *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the privilege must yield to Brunson's constitutional right to confront his accuser. This argument was presented by Hollins's counsel after the suppression hearing but prior to opening statements and the presentation of evidence. It is unclear whether Brunson joined in Hollins's argument. Nevertheless, the argument was not preserved during Lake's examination at trial. Thus, Brunson has forfeited all but plain error. *Grubb*, 28 Ohio St.3d at 203, 503 N.E.2d 142. Reviewing this issue for plain error, we determine whether Brunson, pursuant to his Sixth Amendment right to confront the witnesses against him, should have been allowed to cross-examine Lake using the recorded statement, which we have determined to be protected by the attorney-client privilege.

### 1. Sixth Amendment right to confrontation and the attorney-client privilege

{¶ 52} The Sixth Amendment to the United States Constitution guarantees defendants the right to confront the witnesses against them, which specifically includes the right to cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Cross-examination presents an opportunity for counsel to impeach a witness by introducing evidence that the witness has possible biases or ulterior motives that may relate to the case. *Davis* at 316. The exposure of a witness's motivation in testifying is a proper and important function of the defendant's Sixth Amendment right. *Id*. at 316-317.

20

**{¶ 53}** However, the right to confrontation is not limitless. The right does not prevent a trial court from imposing limits on defense counsel's inquiry into the potential biases of a prosecution witness. *Van Arsdall* at 679. " '[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective [in the manner] that the defendant might wish.' " (Emphasis added in *Fensterer*.) *Id.*, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

**{¶ 54}** The attorney-client privilege, in contrast, is not a right found in either the United States Constitution or the Ohio Constitution. *See Leslie*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, at ¶ 18. Yet, it is a hallowed privilege that goes back at least as far as the reign of Queen Elizabeth I and is deeply rooted in the common law. *See Upjohn Co.*, 449 U.S. at 389, 101 S.Ct. 677, 66 L.Ed.2d 584; *see also* Geoffrey C. Hazard Jr., *An Historical Perspective on the Attorney-Client Privilege*, 66 Calif.L.Rev. 1061, 1069 (1978). The privilege protects a client's statements to his or her attorney regarding past crimes. *See State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 384, 700 N.E.2d 12 (1998) (the privilege shields communications about crimes already committed but cannot be used to enable a person to carry out contemplated crimes).

**{¶ 55}** Neither this court nor the United States Supreme Court has addressed whether a defendant's constitutional right to cross-examination may trump a witness's statutory and common-law right to the attorney-client privilege. The Supreme Court has left the issue unresolved, but its case law indicates that if the privilege were to ever yield to the Confrontation Clause, it would be under only the most extraordinary circumstances.

**{¶ 56}** The United States Supreme Court has stated that "[e]videntiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). "The fundamental basis upon which all rules

of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth." *Funk v. United States*, 290 U.S. 371, 381, 54 S.Ct. 212, 78 L.Ed. 369 (1933); *see also Swidler & Berlin*, 524 U.S. at 411, 118 S.Ct. 2081, 141 L.Ed.2d 379 (O'Connor, J., dissenting). Thus, a privilege should operate "only where 'necessary to achieve its purpose.' " *Swidler & Berlin* at 412 (O'Connor, J., dissenting), quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

{¶ 57} The Supreme Court opined that certain privileges, even those as important as the President's privileges, could yield to a defendant's right to cross-examination when there is a demonstrated specific need for the evidence. *Herbert* at 175. However, in speaking about the attorney-client privilege in the context of a posthumous disclosure of privileged statements, the Supreme Court protected the privilege and expressed that "the loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place." *Swidler & Berlin* at 408; *see also Peña-Rodriguez v. Colorado*, 580 U.S. 206, ___, 137 S.Ct. 855, 874, 197 L.Ed.2d 107 (2017) (Alito, J., dissenting) (to preserve our system of justice, courts have often protected confidential communications of great value at the expense of losing important evidence). This statement is an important one; it indicates that even when the attorney-client privilege applies to a communication between a witness and his or her attorney, the loss of the evidence that is protected by that privilege could be justified, because without that protection, the witness may never have made the communication in the first place.

{¶ 58} For the attorney-client privilege to have meaning in our society, "the attorney and the client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn Co.*, 449 U.S. at 393, 101 S.Ct. 677, 66 L.Ed.2d 584. If the privilege were to yield to a defendant's Sixth Amendment right to cross-examination in every case, then it is highly unlikely that

clients would continue to speak freely with their counsel. "An uncertain privilege * * * is little better than no privilege at all." *Id.*

{¶ 59} Brunson, however, encourages us to look to the federal courts that have addressed the alleged conflict between a defendant's right to confrontation and the witness's attorney-client privilege and to adopt a balancing test to determine whether the attorney-client privilege yields to the defendant's right to confrontation. Federal courts that have addressed this alleged conflict have found that the privilege may yield if it is necessary to ensure the level of cross-examination guaranteed by the Sixth Amendment. *See, e.g.*, *United States ex rel. Blackwell v. Franzen*, 688 F.2d 496, 499-500 (7th Cir.1982); *Rainone*, 32 F.3d at 1206; *Jenkins v. Wainwright*, 763 F.2d 1390, 1392 (11th Cir.1985); *Neku v. United States*, 620 A.2d 259, 261-263 (D.C.1993); *Morales v. Portuondo,* 154 F.Supp.2d 706, 729-730 (S.D.N.Y.2001).

{¶ 60} While the federal courts employ various analyses to reach their conclusions, a consistent question is asked: whether the defendant has other means to effectively cross-examine the witness without the privileged statements. *See Blackwell* at 501; *Jenkins* at 1392. Most courts answering this question have determined that use of the privileged statement is unnecessary for the defendant to have constitutionally effective cross-examination when other means to cross-examine the witness are available. *See Neku* at 263-264. In very few circumstances have the federal courts found that a defendant's right to confrontation has trumped a person's attorney-client privilege. *See Salem v. North Carolina*, 374 F.Supp. 1281, 1283 (W.D.N.C.1974); Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges*, at Section 11.4.2.

### 2. *Lake was cross-examined effectively* **without** *the recorded statement*

{¶ 61} The parties agree that this situation is unique. The state's disclosure of the recorded statement "let the cat out of the bag" so to speak, providing Brunson with Lake's thoughts and Lake's attorney's advice on Lake's proffer statement; this

information should never have been made available to Brunson and his codefendants. While the recorded statement could have been useful on cross-examination, Brunson was able to cross-examine Lake effectively without the recorded statement.

{¶ 62} Lake's credibility and his involvement in the crime was raised numerous times at trial and during his cross-examination. The jury heard evidence about Lake's lifestyle—his use of marijuana and his delinquency at work. The jury also heard evidence that Lake may have played a role in the crime despite his assertions that he was not involved. Lake made inconsistent statements about how he ended up riding in a car with Hollins and Brunson to the Cooley Lounge. And Lake made inconsistent statements about being asleep in the car during the robbery; he also described to officers the types of bags the defendants allegedly brought back with them after robbing the bar. Additionally, one bar patron testified that Lake sent her daughter a friend request on Facebook months after the incident. The bar patron informed police of the request because Lake was not a family friend, and she was concerned that his request was connected to the homicide. This testimony effectively places Lake's credibility, involvement in the crime, and character in question.

{¶ 63} But even if we were to conclude that Brunson could not cross-examine Lake effectively without using the recorded statement, we need not determine whether Brunson's right to cross-examination trumps Lake's attorney-client privilege, because it is apparent from the facts presented at trial that Brunson cannot demonstrate a reasonable probability that but for his inability to cross-examine Lake using the recorded statement, the result of the trial would have been different. *See Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, at ¶ 130. Even without Lake's testimony, the evidence against Brunson is strong. Brunson's phone calls from jail implicated him in the crime. DNA evidence from the discarded cup affirmatively places Brunson at the crime scene as one of the

three assailants. And Brunson, based on his height and weight, was identified as the first man to enter the bar, the one who kicked one of the patrons and shot the bartender a third and final time. Lake may have had a role in this crime, but it does not change the fact that the state presented a wealth of evidence against Brunson to prove *his* guilt.

{¶ 64} Therefore, we reject Brunson's argument that Lake's attorney-client privilege should have yielded to Brunson's right to confrontation.

### C. Silence at sentencing

#### 1. Brunson has forfeited all but plain error

{¶ 65} In his first proposition of law, Brunson challenges the trial court's consideration of his decision to remain silent and waive allocution in finding that he lacked remorse under R.C. 2929.12(D)(5). He argues that such a consideration is a violation of his right to remain silent under the United States Constitution and the Ohio Constitution.

{¶ 66} The state maintains that Brunson has forfeited this issue because his counsel did not object to that specific consideration at the trial level. The state concedes that Brunson's counsel raised an issue about the court's consideration of Brunson's silence at the presentence investigation meeting but notes that Brunson's counsel failed to challenge the trial court's assertion that it could use Brunson's waiver of allocution in its lack-of-remorse consideration. The state argues, however, that the trial court did properly consider Brunson's silence as evidence of his lack of remorse because some adverse inferences are permissible at sentencing. Additionally, the state contends that even if the trial court erred, the sentence would have been the same given the other factors considered by the trial court that demonstrate Brunson's lack of remorse.

{¶ 67} We find that Brunson has forfeited all but plain error because his attorney failed to object to this specific sentencing issue at trial. *West*, ___ Ohio St.3d ___, 2022-Ohio-1556, ___N.E.3d___, at ¶ 2. And because Brunson has failed

to develop his argument under the Ohio Constitution, we focus our analysis on whether the trial court violated Brunson's Fifth Amendment right to remain silent. *See State v. O'Malley*, ___ Ohio St.3d ___, 2022-Ohio-3207, ___ N.E.3d ___, ¶ 30 (this court addressed the defendant's excessive-fines argument under the United States Constitution only because the defendant had failed to develop an argument under the Ohio Constitution).

### 2. This proposition of law is reviewable

{¶ 68} The parties do not contest the reviewability of this issue. However, given our recent decisions in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, and *State v. Bryant*, ___ Ohio St.3d ___, 2022-Ohio-1878, ___ N.E.3d ___, regarding an appellate court's ability to review a trial court's sentencing findings under R.C. 2929.12, we find it necessary to address our authority to resolve this issue.

{¶ 69} This proposition of law challenges whether a trial court properly considered a certain factor in its sentencing decision under R.C. 2929.12. The appellate court's jurisdiction to review sentencing factors is limited under R.C. 2953.08(G)(2)(b). Under that statute, the appellate court cannot modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *Jones* at ¶ 39. However, the appellate court is not prohibited from reviewing a sentence "when the claim is that the sentence was improperly imposed based on impermissible considerations." *Bryant* at ¶ 22. Indeed, appellate courts are permitted to reverse or modify sentencing decisions that are " ' "otherwise contrary to law." ' " *Id.*, quoting *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b).

{¶ 70} Brunson's challenge of the trial court's consideration of his constitutional right to remain silent in its evaluation of his lack of remorse—a sentencing factor under R.C. 2929.12(D)(5)—falls under this court's definition of

"otherwise contrary to law." *See Bryant* at ¶ 22; *Jones* at ¶ 34; *see also Jones* at ¶ 49 (Fischer, J., concurring). Therefore, we may review this issue.

### 3. *Lack of remorse and the Fifth Amendment right to remain silent*

{¶ 71} The issue presented in this case is whether a defendant's silence may be considered by a trial court as a demonstration of that defendant's lack of remorse for purposes of sentencing. We find that the trial court did err in considering Brunson's silence as a factor in its lack-of-remorse analysis.

### a. *For a person to have remorse, that person must have committed a wrong*

{¶ 72} A trial court is required to consider whether "the offender shows no genuine remorse for the offense" in its recidivism determination in developing a defendant's sentence. R.C. 2929.12(A) and (D)(5). The General Assembly does not define "remorse" in the statute. But the term, when given its plain and ordinary meaning, refers to a person's sadness, guilt, or regret for a wrong that person has committed. *Webster's Third New International Dictionary* 1921 (defining "remorse" as "a gnawing distress arising from a sense of guilt *for past wrongs* (as injuries done to others)" [emphasis added]); *Black's Law Dictionary* 1549 (11th Ed.2019) (defining "remorse" as "[a] strong feeling of sincere regret and sadness over *one's having behaved badly or done harm*; intense, anguished self reproach and compunction of conscience, *especially for a crime one has committed*" [emphasis added]); *Cambridge Dictionary*, https://dictionary.cambridge.org /us/dictionary/english/remorse (accessed Oct. 23, 2022) [https://perma.cc/6QZ5-UNND] (defining "remorse" as "a feeling of sadness and being sorry *for something you have done*" [emphasis added]). Having remorse is not the same as having sympathy; remorse necessarily requires guilt for wrongdoing—thus the question: whether a trial court violates a defendant's Fifth Amendment right to remain silent when it considers that defendant's silence in its determination that the defendant shows no genuine sadness, guilt, or regret for committing the offense.

*b. The United States Supreme Court has prohibited negative inferences from a defendant's silence at sentencing about factual determinations respecting the circumstances and details of the crime*

{¶ 73} The Fifth Amendment to the United States Constitution extends to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Fifth Amendment provides, "No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law * * *." The Supreme Court has construed the Fifth Amendment to guarantee every criminal defendant "the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty * * * for such silence.' " (Ellipsis added in *Estelle*.) *Estelle v. Smith*, 451 U.S. 454, 468, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), quoting *Malloy* at 8.

{¶ 74} The right to remain silent is "as broad as the mischief against which it seeks to guard." *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892), *overruled in part on other grounds by Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Estelle* at 468. And the Fifth Amendment's protection against self-incrimination applies not only to evidence that may support a criminal conviction directly but also to information that may furnish a link in the chain of evidence that could lead to prosecution. *Cincinnati v. Bawtenheimer*, 63 Ohio St.3d 260, 266, 586 N.E.2d 1065 (1992).

{¶ 75} A defendant's right to remain silent extends past trial and through sentencing, *Estelle* at 462-463, because liability for the crime with which the defendant is charged continues until the sentence has been imposed, *Mitchell v. United States*, 526 U.S. 314, 328-330, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). " 'The essence of this basic constitutional principle is "the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel

28

expedient of forcing it from his own lips." ' " (Emphasis added in *Estelle*.) *Id.* at 326, quoting *Estelle* at 462, quoting *Culombe v. Connecticut*, 367 U.S. 568, 581-582, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Thus, "[t]he normal rule in a criminal case permits no negative inference from a defendant's failure to testify." *Id.* at 328.

{¶ 76} Though the rule about negative inferences arguably goes beyond the text, history, and purpose of the Fifth Amendment, *see id.* at 332 (Scalia, J., dissenting)—factors we generally consider when reviewing constitutional provisions, *see O'Malley*, ___ Ohio St.3d ___, 2022-Ohio-3207, ___ N.E.3d ___, at ¶ 35—the Supreme Court has developed and embraced a more expansive view of the Fifth Amendment because "the American system of criminal prosecution is accusatorial, not inquisitorial, and * * * the Fifth Amendment privilege is essential to its mainstay," *Malloy*, 378 U.S. at 7, 84 S.Ct. 1489, 12 L.Ed.2d 653. In maintaining its more expansive view of the Fifth Amendment, the Supreme Court declined "to adopt an exception [to the negative-inference prohibition] for the sentencing phase of a criminal case with regard to *factual determinations* respecting the circumstances and details of the crime." (Emphasis added). *Mitchell* at 329. This is because "[t]he concerns which mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing." *Id*. Thus, a trial court cannot consider a defendant's silence at sentencing as far as it relates to the factual determinations surrounding the crime. However, the Supreme Court did not address whether a defendant's "silence bears upon the determination of a lack of remorse, or upon the acceptance of responsibility for the purposes of the downward adjustment provided in [the federal sentencing guidelines]." *Id.* at 330.

{¶ 77} While *Mitchell* did not answer whether a negative inference about a defendant's silence may bear upon a remorse or responsibility determination, the Supreme Court's decision in *White v. Woodall*, 572 U.S. 415, 422, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014), is informative. In *Woodall*, the Supreme Court commented that *Mitchell*, in fact, may permit some negative inferences regarding a

defendant's silence at sentencing because it declined to adopt a "blanket no-adverse-inference instruction" in that case. *Woodall* at 422. The *Woodall* dissent criticized the majority for that statement, noting that the court in *Mitchell* specifically " 'express[ed] no view on it.' " *Woodall* at 430 (Breyer, J., dissenting), quoting *Mitchell* at 330. Nevertheless, the Supreme Court's discussion of *Mitchell* in *Woodall* implies that it may be reasonable for a court to consider a defendant's silence at sentencing as a demonstration of that defendant's lack of remorse.

*c. A lack of remorse is necessarily related to factual determinations about the crime*

{¶ 78} Based on the Supreme Court's precedent, we know generally that negative inferences from a defendant's silence are not permitted under the Fifth Amendment, because it is the state's burden to prove that the defendant is guilty of the alleged crime and that the defendant has an interest in avoiding liability. *Mitchell*, 526 U.S. at 326-328, 119 S.Ct. 1307, 143 L.Ed.2d 424. Additionally, the Supreme Court has declined to provide an exception at sentencing to the general rule prohibiting negative inferences from a defendant's silence when those inferences concern the *factual determinations* about the case. *Id.* at 328. This makes sense, because the factual basis for punishing the defendant is within the purview of the state's burden of proof. Therefore, our focus in determining whether a negative inference from a defendant's silence may be considered as a demonstration of that defendant's lack of remorse is on whether the inference affects the factual determinations in the case. We conclude that it does for a defendant who pleaded not guilty and took the case to trial.

{¶ 79} It is true that the state has no burden under R.C. 2929.12(D)(5) to prove that a defendant lacks remorse. Rather, that provision requires a trial court to consider whether "the offender shows no genuine remorse for the offense" in its recidivism determination. R.C. 2929.12(A) and (D)(5). That there is no burden on the state under R.C 2929.12(D)(5) tends to support the conclusion that an exception to the general rule against negative inferences must apply in this situation.

{¶ 80} The problem, however, is that for a defendant to have "remorse for the offense," the defendant must necessarily have committed or been involved in the offense. This is based on the plain meaning of "remorse." If a defendant is remorseful at sentencing, that necessarily means that the defendant has sadness, guilt, or regret for his or her involvement in the offense. While a defendant may have been found guilty of an offense by the jury, this does not mean that the defendant committed the offense. And it must be stated again that remorse is not the same as sympathy—a person with remorse expresses it by acknowledging his or her wrongdoing.

{¶ 81} Because "remorse" is a loaded term and showing remorse requires a person to acknowledge that he or she committed an offense, a finding of a lack of remorse necessarily goes "to *factual determinations* respecting the circumstances and details of the crime" (emphasis sic), *Mitchell*, 526 U.S. at 328, 119 S.Ct. 1307, 143 L.Ed.2d 424, because it implicates the defendant's role in the crime. For a criminal defendant who pleaded not guilty and took the case to trial, thus maintaining his or her innocence, a finding of a lack of remorse based on the defendant's silence is to use that silence to infer the defendant's involvement in the crime. If the trial court is permitted to use the defendant's silence to infer his or her involvement in the crime, the defendant "might reasonably feel compelled to trade the certainty of incrimination by silence for the possibility of incrimination by statement." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 40 (O'Connor, J., concurring). Such an inference would violate the Fifth Amendment. *See Mitchell* at 326-327 (any effort by the state to compel a defendant to testify at sentencing would clearly contravene the Fifth Amendment). And such an inference would go against the essential purpose of the right to remain silent— "to protect a defendant from being the unwilling instrument of his or her own condemnation," *id.* at 329.

**{¶ 82}** This conclusion is also supported by our own precedent discussing allocution. The defendant has a right to allocute in Ohio under Crim.R. 32(A)(1) for the purposes of making a statement on his or her own behalf or presenting information, like a statement of remorse, in mitigation of punishment. *See State v. Green*, 90 Ohio St.3d 352, 359, 738 N.E.2d 1208 (2000) (the trial court erred in failing to ask the defendant whether he had anything to say prior to being sentenced). But this court has stated that "renewed challenges to the adjudication of guilt are not a proper part of allocution." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 204. It is easy to see why a defendant who maintains his or her innocence may waive allocution, since allocution is not meant to serve as a time to renew challenges to guilt and a defendant cannot express remorse for a crime that he or she denies committing. *State v. Campbell*, 90 Ohio St.3d 320, 325, 738 N.E.2d 1178 (2000) (a defendant may waive the right to allocute). For a defendant to engage in allocution and express remorse, he or she necessarily acknowledges wrongdoing.

**{¶ 83}** For these reasons, we conclude that when a defendant has maintained his or her innocence by pleading not guilty and has taken the case to trial, the trial court errs when it considers the defendant's silence to be a demonstration of that defendant's lack of remorse for purposes of sentencing under R.C. 2929.12(D)(5). To consider the defendant's silence as a lack of remorse in this context would create a negative inference regarding the factual determinations in the case—an inference that is prohibited under *Mitchell*. *See, e.g.*, *State v. Burgess*, 156 N.H. 746, 756, 943 A.2d 727 (2008) (collecting cases); *State v. Willey*, 163 N.H. 532, 545, 44 A.3d 431 (2012); *People v. Young*, 987 P.2d 889, 894 (Colo.App.1999), *as modified on denial of rehearing* (Apr. 15, 1999) (a trial court may not consider a lack of expression of remorse as an aggravating circumstance when a defendant maintains his innocence and invokes his Fifth Amendment right to remain silent); *Brake v. State*, 113 Nev. 579, 585, 939 P.2d 1029 (1997); *State v.*

*Shreves*, 313 Mont. 252, 2002 MT 333, 60 P.3d 991, ¶ 19. Therefore, the trial court's consideration of Brunson's decision to waive allocation and remain silent at sentencing when assessing his lack of remorse for its recidivism determination was error.

### 4. Brunson cannot demonstrate a reasonable probability that but for the trial court's consideration of his silence, his sentence would have been different

{¶ 84} Brunson maintains that the trial court's error guarantees him a new sentencing hearing. The state maintains that the error had no significant effect on Brunson's sentence because there were many other factors that supported the trial court's recidivism determination and the overall sentence imposed. After reviewing the record, we agree with the state that this error did not affect Brunson's sentence.

{¶ 85} A defendant's lack of remorse is only one of five factors a trial court considers when evaluating the defendant's risk of recidivism under R.C. 2929.12(D). The trial court also considers the offender's status under state supervision when the crime was committed, the offender's criminal history, the offender's response to sanctions, and the offender's substance-abuse issues related to the offense. R.C. 2929.12(D)(1) through (4). Here, the trial court considered that Brunson committed the crimes while on postrelease control and that he had been noncompliant with the terms of his postrelease control. The court noted that Brunson had a lengthy criminal history; he had been adjudicated a delinquent nine times for various offenses, including felonious assault and burglary. Based on these facts as found by the trial court, it is apparent that Brunson's risk of recidivism is high.

{¶ 86} Additionally, the trial court is required to consider the seriousness of the conduct and other relevant factors to achieve the purposes and principles of sentencing. As for the seriousness of the crime, the trial court considered the harm to the victims and the manner in which that harm was inflicted, reciting the details

of the manner in which the bar patrons were robbed and assaulted. The court also focused on the final shot at the bartender: "It belies human understanding how anyone could go into that back room where she lay bleeding from the wound already—the wound already given to her by [the codefendant], you check on her, you stand back and you fire that gun right at her and you killed her. Your bullet killed her." These facts as found by the trial court, even without the lack-of-remorse consideration, demonstrate that the outcome of the sentencing hearing would not have been different.

{¶ 87} Therefore, Brunson cannot prevail on this issue.

## IV. CONCLUSION

{¶ 88} We reaffirm our prior holdings that a person waives the attorney-client privilege with regard to direct communications had with his or her attorney either by expressly consenting to the waiver or by voluntarily revealing privileged communications on the same subject in a nonprivileged context. *See Jackson*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, at paragraph one of the syllabus; *McDermott*, 72 Ohio St.3d 570, 651 N.E.2d 985, at paragraph one of the syllabus; R.C. 2317.02(A). We agree with the lower courts' determinations that Lake did not waive his attorney-client privilege in this case.

{¶ 89} We also hold that while there may be circumstances in which the attorney-client privilege may yield to a defendant's right to confrontation, those circumstances do not exist in this case. But even if they did, Brunson has not demonstrated a reasonable probability that the result of his trial would have been different but for his inability to cross-examine Lake at trial using the recorded statement.

{¶ 90} Additionally, we hold that a trial court errs when it considers a defendant's decision to waive allocution and remain silent at sentencing as demonstrating that defendant's lack of remorse when the defendant pleaded not guilty and took the case to trial. While the trial court erred in considering Brunson's

decision to waive allocution and remain silent in finding that he lacked remorse, the record demonstrates that Brunson's sentence would not have been different absent this error.  Therefore, we affirm the judgment of the Eighth District Court of Appeals.

                                                              Judgment affirmed.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

O'CONNOR, C.J., and KENNEDY, J., concur in judgment only.

DEWINE, J., concurs in judgment only, with an opinion.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 91} I concur in the majority's judgment affirming Nigel Brunson's convictions and sentence.  As the majority notes, every proposition of law raised by Brunson in this appeal has been forfeited and he has failed to establish plain error.  I would decide the case on that basis alone.  But because the majority goes further, I add a few observations concerning some of the dicta in the majority opinion.

{¶ 92} First, I am skeptical that R.C. 2317.02(A)—which governs when "[a]n attorney" may testify "concerning a communication made to the attorney by a client"—has any applicability in resolving the question whether a witness has waived the attorney-client privilege through his own testimony.  I would consider revisiting our precedent expanding this statute's application beyond an attorney's testimony, *see Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, in a case in which the record on that issue is more fully developed.

{¶ 93} Additionally, I cannot join the majority's conclusion that the trial court violated Brunson's constitutional protection against self-incrimination in considering Brunson's silence at sentencing as being indicative of his lack of remorse.  Because Brunson did not assert his right against self-incrimination at the sentencing hearing, it makes no sense to decide whether a court may consider the

asserting of that right in fashioning a sentence. But because the majority reaches the issue anyway, I will explain why I disagree with its musings.

{¶ 94} The Fifth Amendment to the United States Constitution provides that no person shall be "compelled in any criminal case to be a witness against himself." The amendment is directed at preventing a person from being "compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' " *Lefkowitz v. Turley*, 414. U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); *see also Carter v. Kentucky*, 450 U.S. 288, 306, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) (Powell, J., concurring) (noting that the right "enables a defendant in a criminal trial to elect to make no contribution to the fact-finding process").

{¶ 95} The United States Supreme Court has expounded on the history of the right:

> [T]he privilege was intended to prevent the use of legal compulsion to extract from the accused a sworn communication of facts which would incriminate him. Such was the process of the ecclesiastical courts and the Star Chamber—the inquisitorial method of putting the accused upon his oath and compelling him to answer questions designed to uncover uncharged offenses, without evidence from another source. The major thrust of the policies undergirding the privilege is to prevent such compulsion.

(Citations omitted.) *Doe v. United States*, 487 U.S. 201, 212, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). Thus, the privilege protects those who are suspected of having committed a crime from being subjected to "the cruel trilemma of self-accusation, perjury or contempt that defined the operation of the Star Chamber, wherein

36

suspects were forced to choose between revealing incriminating private thoughts and forsaking their oath by committing perjury." (Cleaned up.) *Pennsylvania v. Muniz*, 496 U.S. 582, 596, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990).

{¶ 96} It is true that the United States Supreme Court has recognized that the privilege against self-incrimination can in some contexts be invoked during the sentencing phase of a criminal proceeding. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (applying the Fifth Amendment protection to preclude the admission of the results of an involuntary, un-Mirandized pretrial psychiatric examination during the penalty phase of a capital case).

{¶ 97} But the Supreme Court has stopped well short of endorsing the view advocated by the majority opinion today. In *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), a divided court held that a sentencing judge may not consider a defendant's failure to testify in "determining facts of the offense at the sentencing hearing," *id.* at 330. Significantly, though, *Mitchell* was a case in which the state had the burden of establishing additional facts at sentencing. *See id.* ("The Government *retains the burden of proving facts relevant to the crime at the sentencing phase* and cannot enlist the defendant in this process at the expense of the self-incrimination privilege" [emphasis added]). Thus, *Mitchell* prohibits only the drawing of an adverse inference for the purpose of establishing adjudicative facts at sentencing. *See also id.* at 341 (Scalia, J., dissenting) (pointing out the complete lack of historical support for the notion that the Fifth Amendment should shield a defendant "from the natural and appropriate consequences of her uncooperativeness at the sentencing phase").

{¶ 98} There is little to support the notion that the protection against self-incrimination precludes consideration of a defendant's lack of remorse evinced through a refusal to make an unsworn statement at sentencing. *See, e.g.*, *Burr v. Pollard*, 546 F.3d 828, 832 (7th Cir.2008) ("silence can be consistent not only with exercising one's constitutional right, but also with a lack of remorse," the latter of

which "is properly considered at sentencing"); *Lee v. Crouse*, 451 F.3d 598, 605 (10th Cir.2006), fn.3 ("the circuit courts have readily confined *Mitchell* to its stated holding, and have allowed sentencing courts to rely on, or draw inferences from, a defendant's exercise of his Fifth Amendment rights for purposes other than determining the facts of the offense of conviction"). The court in *Mitchell* expressly left that question open, *id*. at 330, holding only that courts may not make a negative inference at sentencing "with regard to factual determinations respecting the circumstances and details of the crime" based on the defendant's *failure to testify*, *id.* at 328. And even assuming the right against self-incrimination extends to unsworn allocution statements, it may not afford a defendant the same degree of protection during the sentencing phase that it would provide prior to and during trial. *See White v. Woodall*, 572 U.S. 415, 421, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) ("it is not uncommon for a constitutional rule to apply somewhat differently at the penalty phase than it does at the guilt phase").

{¶ 99} We need not resolve these questions here, however, for the simple reason that Brunson did not assert his Fifth Amendment right against self-incrimination at the sentencing hearing. "Had he done so, he would have alerted the court to the fact that his silence should be viewed as an exercise of his constitutional right rather than a lack of remorse." *United States v. Keskes*, 703 F.3d 1078, 1091 (7th Cir.2013); *see also Mitchell* at 319 (defendant asserted his Fifth Amendment right at sentencing).

{¶ 100} Thus, I would not find that the trial court plainly erred in violation of Brunson's Fifth Amendment right against self-incrimination, because Brunson asserted no such right. And I'd leave for a case in which the issue is properly presented the question whether a defendant's assertion at sentencing of his Fifth Amendment right against self-incrimination can be considered by the trial court as evidence of the defendant's remorse when determining his sentence.

––––––––––––––––

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Katherine Mullin, and Daniel A. Cleary, Assistant Prosecuting Attorneys, for appellee.

Cullen Sweeney, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Zachary P. Keller, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Russell S. Bensing, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

————————————