[Cite as *State v. Givens*, 2024-Ohio-2563.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JUSTIN M. GIVENS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case Nos. 23 CO 0039, 23 CO 0040

---

Criminal Appeals from the
Court of Common Pleas of Columbiana County, Ohio
Case Nos. 22 CR 05 and 22 CR 415

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino,* Prosecuting Attorney, *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office*, for Plaintiff-Appellee and

*Atty. Christopher Bazeley*, for Defendant-Appellant.

Dated: July 2, 2024

**Robb, P.J.**

{¶1} Defendant-Appellant Justin M. Givens appeals the judgments of the Columbiana County Common Pleas Court entered after he pled guilty in two criminal cases. Appellant contends the trial court improperly held his silence at sentencing against him while opining he lacked remorse. He also argues certain offenses might have been subject to merger prior to sentencing. Lastly, he claims his pleas should be vacated because the phraseology "can be punished separately" in the court's oral plea colloquy was not a specific advisement that the sentence for any new felony committed on post-release control (if placed on it in the future) would be "consecutive" to any sentence imposed for the post-release control violation. For the following reasons, Appellant's convictions are upheld, and the trial court's two sentencing judgments are affirmed.

STATEMENT OF THE CASE

{¶2} In Columbiana County Common Pleas Case Number 22 CR 5, Appellant was indicted for the following three offenses occurring on December 26, 2021: improper handling of a firearm in a motor vehicle, a fourth-degree felony; obstructing official business, a second-degree misdemeanor; and endangering children, a first-degree misdemeanor. (2/10/22 Ind.).

{¶3} On March 18, 2022, while he was out on bond in 22 CR 5, he shot and killed his children's grandmother in front of his two young children. He stole two guns from her house and subsequently buried them, broke a shared cell phone to avoid tracking, and slept in a field overnight with his children, who were found wet, cold, and hungry. (Sent.Tr. 10).

{¶4} As a result of these events, Appellant was indicted in Columbiana County Common Pleas Case Number 22 CR 415 for eight offenses. The first two counts were aggravated murder and murder, both with a firearm specification. The third and fourth counts were third-degree felony thefts, one for a .380 semi-automatic firearm and one for a rifle. The fifth and sixth counts were two third-degree felony counts of tampering with evidence, for burying the guns and breaking the phone. The seventh count was fifth-

degree felony drug possession (methamphetamine).  The eighth count was first-degree misdemeanor endangering children.  (7/14/22 Ind.).

{¶5}    On April 21, 2023, Appellant entered a plea agreement in 22 CR 5.  He pled guilty to improper handling of a firearm in a motor vehicle and endangering children.  In exchange, the state agreed to dismiss the obstruction charge.  As part of the agreement, the state agreed to recommend 15 months in prison for the fourth-degree felony and a concurrent jail term of 180 days for the misdemeanor.  A presentence investigation (PSI) was ordered.

{¶6}    On July 10, 2023, Appellant entered a plea agreement in 22 CR 415.  The state agreed to dismiss the charge of aggravated murder.  In exchange, Appellant pled guilty to the remaining charges.  As part of the agreement, the state agreed to recommend a total sentence of 21 years to life by seeking the following terms:  15 years to life for murder plus three years for the firearm specification; 18 months on counts three and four to run concurrently with each other but consecutively to the other offenses; 18 months on counts five and six to run concurrently with each other but consecutively to the other offenses; 10 concurrent months on count seven; and 180 days of concurrent jail time on count eight.  A PSI was not ordered for this case.

{¶7}    A joint sentencing hearing in the two cases was held on July 18, 2023.  Although the prior written plea agreements anticipated the defense would seek a lower sentence than recommended by the state, at sentencing, the defense asked the court to impose the sentence recommended by the prosecution, stating it was now a joint recommendation. (Tr. 27-29).

{¶8}    The court imposed all requested sentences except for the 10 concurrent months recommended for drug possession (count seven in 22 CR 415), which the court chose to impose as a consecutive sentence.  (Sent.Tr. 34, 36-38).  In 22 CR 415, this resulted in a total prison sentence of 21 years and 10 months to life (instead of the jointly recommended 21 years to life in prison).  The sentences in the two cases were run consecutively with each other.  (Sent.Tr. 38).

{¶9}    Appellant filed a timely notice of appeal from the July 19, 2023 sentencing judgments.  The appeal in 22 CR 5 resulted in 7th Dist. No. 22 CO 39, and the appeal in

22 CR 415 resulted in 7th Dist. No. 22 CO 40. Appellant filed one brief with arguments addressing both cases after this court granted a motion for consolidated briefing.

ASSIGNMENT OF ERROR ONE

**{¶10}** Appellant sets forth three assignments of error, the first of which alleges:

"THE TRIAL COURT ERRED WHEN IT FOUND THAT GIVENS' MAINTAINING HIS INNOCENCE AND REMAINING SILENT AT SENTENCING AMOUNTED TO A LACK OF REMORSE UNDER R.C. 2929.12."

**{¶11}** Appellant argues the court erred when it considered his silence at sentencing as evidence that he lacked remorse. He claims the court's comments on his remorse show he was inappropriately punished for exercising his constitutional right to remain silent.

**{¶12}** Lack of genuine remorse is a statutory sentencing factor relevant to recidivism. Specifically, "The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes: * * * (5) The offender shows no genuine remorse for the offense." R.C. 2929.12(D)(5). *Compare* R.C. 2929.12(E)(5) (stating recidivism less likely if the "offender shows genuine remorse"). Pursuant to Crim. R. 32(A)(1), the trial court shall give the defendant an opportunity to speak during sentencing or present any information in mitigation of punishment. This process "is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-60, 738 N.E.2d 1208 (2000).

**{¶13}** The *Brunson* case relied upon by Appellant addressed the application of the Fifth Amendment to a sentencing court's use of a defendant's silence at trial to find a lack of genuine remorse. *State v. Brunson*, 171 Ohio St.3d 384, 2022-Ohio-4299, 218 N.E.3d 765. The cited right to remain silent to protect against self-incrimination provides in pertinent part: "No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law * * *." Fifth Amendment to the U.S. Constitution.

**{¶14}** The *Brunson* Court began by observing the "normal rule" prohibits the drawing of negative inferences, including during sentencing, about "factual determinations respecting the circumstances and details of the crime" based on a

defendant's failure to testify. *Brunson*, 171 Ohio St.3d 384 at ¶ 75-76, quoting *Mitchell v. United States*, 526 U.S. 314, 328-329, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) (the holding that an adverse factual inference may not be drawn from silence at sentencing does not answer the question of whether silence at sentencing can influence a court's decision on the sentencing factor of remorse). The Ohio Supreme Court then acknowledged the United States Supreme Court subsequently suggested, "it may be reasonable for a court to consider a defendant's silence at sentencing as a demonstration of that defendant's lack of remorse." *Id.* at ¶ 77, citing *White v. Woodall*, 572 U.S. 415, 422, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014).

**{¶15}** The *Brunson* Court then explained that remorse essentially involves an admission to taking part in the offense and is not akin to a mere expression of sympathy. *Id.* at ¶ 72, 80-82 ("It is easy to see why a defendant who maintains his or her innocence may waive allocution, since allocution is not meant to serve as a time to renew challenges to guilt and a defendant cannot express remorse for a crime that he or she denies committing."). The Court concluded the use of the defendant's silence to draw a negative inference on remorse was not constitutionally permissible because it affected the factual determinations in the case "*for a defendant who pleaded not guilty and took the case to trial*." (Emphasis added.) *Id.* at ¶ 78.

**{¶16}** In other words, "*when a defendant has maintained his or her innocence by pleading not guilty and has taken the case to trial*, the trial court errs when it considers the defendant's silence to be a demonstration of that defendant's lack of remorse for purposes of sentencing under R.C. 2929.12(D)(5)." (Emphasis added.) *Id.* at ¶ 83. "To consider the defendant's silence as a lack of remorse *in this context* would create a negative inference regarding the factual determinations in the case—an inference that is prohibited under *Mitchell*." (Emphasis added.) *Id.*

**{¶17}** Distinguishably, *Appellant pled guilty and thereby admitted the offenses. Brunson* involved a defendant who took the case to trial, where he remained silent.

**{¶18}** "The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B). At the plea hearings in each of Appellant's cases, Appellant said he understood he was making a complete admission to the charges. (4/21/23 Plea Tr. 9); (7/10/23 Plea Tr. 13). He also wrote "yes" in his sworn and signed filings when asked, "Do you fully

realize that when you complete your Response to Court under oath, you are confessing that you are truly guilty of committing the crime to which you plead guilty * * *." (7/12/23 Def.Resp. to Ct. in 22 CR 415); (4/21/23 Def.Resp. to Ct. in 22 CR 05).

{¶19} As the state points out, other appellate districts have similarly distinguished the error in *Brunson* and applied the *Brunson* holding to permit consideration of silence at sentencing after a guilty plea, as silence at sentencing post-plea can properly be interpreted as tending to show the lack of remorse statutory sentencing factor. *See State v. Lowery,* 2d Dist. Clark No. 2023-CA-4, 2023-Ohio-4444, ¶ 18; *State v. Gurto*, 11th Dist. Ashtabula No. 2022-A-0045, 2023-Ohio-2351, ¶ 19-21. The state also notes that even prior to the *Brunson* Court limiting its holding to sentencing *after a trial*, appellate courts were opining a trial court does not violate the right to remain silent *after a guilty plea* by considering a failure to express remorse. *See, e.g., State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 33, citing *State v. Clunen*, 7th Dist. Columbiana No. 12 CO 30, 2013-Ohio-5525, ¶ 21; *State v. Duhl*, 2d Dist. Champaign No. 2016-CA-30, 2017-Ohio-5492, ¶ 31.

{¶20} Because Appellant pled guilty to the offenses, the *Brunson* decision prohibiting courts from using silence against the defendant is inapplicable, as it specifically applied to defendants who took their case to trial. A negative inference from failing to express or otherwise show remorse is not prohibited after a guilty plea.

{¶21} Moreover, the defendant forfeits all but plain error on appeal where defense counsel failed to object to this specific constitutional argument when the sentencing factor on remorse was mentioned by the trial court in conjunction with the defendant's silence at the sentencing hearing. *Brunson*, 171 Ohio St.3d 384 at ¶ 67. Where defense counsel failed to *specifically* challenge the sentencing court's consideration of the defendant's lack of allocution as relevant to a lack of remorse, the Supreme Court required the appellant in *Brunson* to meet the plain error standard (even though his attorney raised an argument about the court's consideration of the silence exercised during a presentence-investigation interview). *Id.* at 65-67.

{¶22} Here, no objection was made while the court was addressing Appellant's lack of remorse. Later, at the close of the sentencing hearing, after imposing the sentence, the court asked if there was anything further from the defense. Appellant's

attorney answered, "Just to note our objection as to the consecutive sentences as well as the violent offender designation. Other than those objections, nothing further, Your Honor." (Sent.Tr. 44-45).

**{¶23}** This was not an objection claiming the court improperly considered silence at sentencing as showing a lack of genuine remorse. *See Brunson*, 171 Ohio St.3d 384 at ¶ 65-67 (finding the issue was not preserved below where an even stronger case for preservation was made). Accordingly, even if we had found an error above, we would be applying only a plain error standard of review to this issue. *Id.* at ¶ 65-67.

**{¶24}** The discretion to recognize plain error must be exercised with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Crim.R. 52(B) does not demand that an appellate court correct [the error]. Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *Id.* But first, an error must be found, and the deviation from a legal rule must be an *obvious* defect in the trial court proceedings. *Id.* In addition to showing an obvious error, the defendant must demonstrate a reasonable probability the error resulted in prejudice; the probability of a different result must be sufficient to undermine the reviewing court's confidence in the outcome of the proceeding. *Id.*; *Brunson*, 171 Ohio St.3d 384 at ¶ 25, 84-87, 90, citing *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 130. *See also State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22 (plain error's reasonable probability test is the same prejudice test used in reviewing ineffective assistance of counsel claims).

**{¶25}** Although *Brunson* ruled the sentencing court erred by finding the defendant's lack of allocution showed a lack of remorse (after that defendant took the case to trial where he remained silent), the Supreme Court nevertheless concluded the defendant did not show this constituted plain error requiring a new sentencing hearing. *Brunson*, 171 Ohio St.3d 384 at ¶ 84-87. Specifically, the defendant did not demonstrate a reasonable probability that but for the trial court's consideration of his silence, his sentence would have been different. *Id.* (pointing to other factors supporting the trial court's recidivism determination and the overall sentence imposed).

{¶26} Here, five relatives of the victim spoke at sentencing, and a victim impact statement from another relative was submitted to the court. Appellant's lack of remorse over the period of time since the murder was addressed by various relatives. (Sent.Tr. 18, 20, 24). Defense counsel acknowledged the issue for the court "does, in fact, center on Mr. Given[s'] remorse and feelings that he has inside that are very difficult for him to articulate." (Sent.Tr. 25). Counsel said Appellant accepted responsibility and was accepting the state's sentencing recommendations "to minimize the harm that he has done * * * so the family didn't have to go through anymore turmoil because of his decisions and actions." (Sent.Tr. 27-28). Counsel concluded by stating, "Justin does offer up his deep condolences to the family for what had occurred, what he did, and what he caused." (Sent.Tr. 29). The court was not required to believe this constituted genuine remorse.

{¶27} Appellant criticizes the court's subsequent observations, including: "I hope that you listened to every single word that was said in here, because as you sit before me right now, I see zero emotion. I see zero remorse. I actually see no care at all. I have witnessed that from you every time you have been in front of me. Not even a mere sorry. Not a tear shed for the life you took." (Sent.Tr. 29-30). After discussing his persistence in obtaining the guns to commit the murder even after firearms were removed from him and the impact of his offense on his children and other family members, the court addressed the statements by the relative who spoke at sentencing by making the following observations: "And you don't even have the decency to tell them you're sorry, that you made a mistake. I have never heard that from you either. This was your opportunity to say that and you didn't. You had nothing to say. And maybe that is the proper way. Maybe there are no words that can actually describe the heinous acts you committed." (Sent.Tr. 31).

{¶28} The court said it considered all of the seriousness and recidivism factors. Various negative sentencing factors were discussed at sentencing. (Sent.Tr. 4-7, 9-12, 30-32). Appellant committed the murder and other offenses in 22 CR 415 while he was out on bond in 22 CR 5. He killed the grandmother of his children in front of his children, indicating his relationship with the victim facilitated the offense. By the time of the sentencing at issue, he was serving a sentence for escape and another weapons offense.

He also had pending charges due to conduct while incarcerated. In addition, his criminal record contained various criminal charges predating these offenses.

**{¶29}** The court's decision to impose ten months more than the jointly recommended sentence was not primarily based on Appellant's silence at sentencing. Appellant has not demonstrated his case involves exceptional circumstances, a manifest miscarriage of justice, or a reasonable probability his sentence would have been different (had the court refrained from mentioning his lack of allocution at sentencing). Regardless, Appellant's constitutional rights were not violated by considering his silence at sentencing *after he pled guilty* to the offenses. This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**{¶30}** Appellant's second assignment of error contends:

"THE TRIAL COURT FAILED TO PROPERLY MERGE ALLIED OFFENSES OF SIMILAR IMPORT."

**{¶31}** Appellant argues the trial court failed to consider whether the two counts involving theft of a firearm (counts three and four) should be merged into one count and whether the two counts involving tampering with evidence (counts five and six) should be merged into one count. As Appellant points out, running sentences concurrently is not akin to merging offenses. *State v. Holcomb*, 7th Dist. Mahoning No. 19 MA 0083, 2021-Ohio-2352, ¶ 46-47, citing, *e.g.*, *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. In claiming the trial court erred, Appellant cites *Underwood* where the Supreme Court made the following holding: "[A] trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import. A defendant's plea to multiple counts does not affect the court's duty to merge those allied counts at sentencing. This duty is mandatory, not discretionary." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26. Accordingly, "when a sentence is imposed on multiple counts that are allied offenses of similar import in violation of R.C. 2941.25(A), R.C. 2953.08(D) does not bar appellate review of that sentence even though it was jointly recommended by the parties and imposed by the court." *Id.*

**{¶32}** Nevertheless, "the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error." *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 7, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-

2459, 38 N.E.3d 860, ¶ 28.  *See also Underwood*, 124 Ohio St.3d 365 at ¶ 27 (*when the issue of allied offenses is before the court*, the question is whether the law allows the court to sentence the defendant on each offense).  Although merger arguments are reviewed de novo, the record must demonstrate an unraised merger issue was an error that was both obvious and prejudicial in order to meet the plain error test on appeal.  *State v. Bailey*, 171 Ohio St.3d 486, 2022-Ohio-4407, 218 N.E.3d 858, ¶ 6-16.  In claiming plain error under Crim.R. 52(B), the defendant has the burden to show there is a reasonable probability that an obvious deviation from a legal rule resulted in prejudice sufficient to undermine our confidence in the outcome of the proceeding.  *Brunson*, 171 Ohio St.3d 384 at ¶ 25, 84-87, 90, citing *Myers*, 154 Ohio St.3d 405 at ¶ 130.  *See also Rogers*, 143 Ohio St.3d 385 at ¶ 22 ("The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claim.").

{¶33} In evaluating merger under R.C. 2941.25, a court can find a defendant's conduct supports multiple sentences for multiple guilty pleas if the offenses were:  (1) dissimilar in import or significance (including when each causes a separate, identifiable harm); (2) similar in import but committed separately; or (3) similar in import but committed with separate animus or motivation.  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 20-21, 25, 31, applying R.C. 2941.25.  If any one aspect of this test is met, then multiple convictions are warranted.  *Id.*

{¶34} Sentencing occurring after a guilty plea typically results in minimal facts being presented on the record in a case where the defense failed to set forth merger arguments below, especially where sentencing is a joint recommendation.  Importantly, each case is fact-dependent with the burden resting on the defense to cite the relevant portions of the factual record supporting the merger argument.  *See Bailey*, 171 Ohio St.3d 486 at ¶ 16 (reversing an appellate court's use of plain error to merge offenses after a jury trial while stating, "it is clear to us that in an area of law so driven by factual distinctions, any asserted error was not obvious.").

{¶35} After the state recited its sentencing recommendations, defense counsel made the following comments about the recommendation:

in essence, the sentence is a joint recommendation. We're not asking the Court to deviate lower than that. I believe that it's a fair resolution to this matter. There are issues that probably need to – there were issues as to that sentence in regards to merger or concurrent sentences. But that being said, Justin accepted the recommendations of the State. And the main reason is to minimize the harm that he has done. Nothing can take back what happened back in March of last year. But what Justin instructed me to do and what we did was reach resolution so that the family didn't have to go through anymore turmoil because of his decisions and actions.

(Sent.Tr. 27). Defense counsel subsequently concluded, "We would ask the Court to, in its analysis, honor the recommended sentence from the State of Ohio." (Sent.Tr. 28-29).

**{¶36}** The trial court's only deviation from the joint recommendation involved the imposition of a consecutive 10-month sentence for possession of methamphetamine instead of the jointly recommended concurrent 10-month sentence. Notably, Appellant sets forth no merger argument as to that offense; nor would any facts support such an argument. Instead, Appellant argues the trial court erred in failing to consider whether the two counts involving theft of a firearm should be merged into one count and whether the two counts involving tampering with evidence should be merged into one count. He does not actually explain why he believes merger was warranted; rather, he broadly contends the court erred in failing to sua sponte conduct an analysis on allied offenses of similar import.

**{¶37}** The indictment specified the theft of a firearm in count three involved a .380 semi-automatic and the theft of a firearm in count four involved a rifle. Counts five and six represented a count of tampering with the evidence for burying the stolen guns and a count of tampering with evidence for breaking a "shared" cell phone to prevent being tracked after he fled with his children and their mother. (Sent.Tr. 11). As relevant to these four offenses, the state briefly recited at sentencing: Appellant stole from the murder victim; he then shot her; and while fleeing, he buried the guns and broke the phone.

**{¶38}** The state opined the acts were separate offenses, each with a separate animus. (Sent.Tr. 10-11). Appellant did not argue these counts should be merged at the sentencing hearing; instead, defense counsel indicated any prior idea of presenting a

merger theory had been abandoned when the defense tactically chose to join the state's sentencing recommendations.

**{¶39}** On appeal, a supported argument is not specified as to how the count representing the act of burying guns constituted an offense that would merge with the count representing Appellant's act of breaking a shared phone to avoid having his movements (during and after the murder) tracked. From all indications in the record, these acts were committed separately. Therefore, there is no indication the tampering with evidence charges in counts five and six could have been merged.[1]

**{¶40}** As to counts three and four, he stole two different guns from one victim, a semi-automatic handgun and a rifle. We note the guns were stolen from the victim's house (not from her person). The record does not indicate where they were stored in the house, who owned each gun, the timing of each theft during the course of events, or the purpose for which Appellant used each gun. For instance, from the comments at sentencing, it appears one of the firearms may have been the murder weapon, which would give rise to a distinct motivation for the theft. (Sent.Tr. 30-31). In any event, the record does not indicate Appellant's animus or motivation for each theft was the same. Nor does the record indicate the thefts were committed together (as opposed to separately) or were similar in significance or harm caused. In accordance, Appellant has not demonstrated on the record the existence of an obvious error or prejudice in the failure to merge counts three and four.

**{¶41}** Lastly, we point out the sentence was jointly recommended. This was not just a guilty plea with a state's agreement to recommend a certain sentence and a defense failure to argue merger at sentencing; rather, this case additionally involves the defense joining the state's sentencing recommendation at the sentencing hearing. That request included an agreement that counts three and four could each receive their own concurrent 18-month sentence (but consecutive to other offenses) and counts five and six could each receive their own concurrent 18-month sentence (but consecutive to other offenses). Not

---

[1] Appellant's brief merger argument is based on the court running the sentences concurrently for "counts three and four and counts five and six"; these sentences were imposed concurrently within the sets but consecutive among the sets. Hence, he does not argue the theft of firearms from one location should be merged into the count of tampering with evidence as applicable to the burying of the firearms at another location. In any event, there is no support for a merger argument between those counts.

only did the defense refrain from protesting the entry of a conviction (guilty plea plus sentence) on each of these four counts, the defense essentially joined in the state's argument that there were no allied offenses of similar import by joining in the concurrent and consecutive recommendations at issue. More notably, defense counsel's mention of a previous defense theory on merger in the midst of explaining the new decision to join in the state's sentencing recommendation indicated the defense was abandoning any merger theory they may have previously contemplated raising. *Compare Underwood*, 124 Ohio St.3d 365 at ¶ 32 (where there was "nothing in the record that demonstrate[d] that Underwood was informed that he was agreeing to be convicted of allied offenses, thereby waiving his constitutional right to be free from double jeopardy.").[2]

**{¶42}** The plea included an agreement for the state to seek dismissal of the aggravated murder count and to recommend lower than maximum sentences on various felonies. The maximum sentence was 36 months in prison for each of the four third-degree felony offenses at issue in this assignment of error. R.C. 2929.14(A)(3)(b). Appellant knew the court was not required to follow the state's request. Even after the defense joined the recommendation of 18 months on each third-degree felony (concurrent between the sets but consecutive with other offenses), there was concern recognized on the record that the court would impose maximum, consecutive sentences on all offenses. Defense counsel specifically observed, "It's easy to just give maximum consecutive sentences in a case like this, but that's not what we're required to do." (Sent.Tr. 28). Clearly, it was a tactical decision to join the lower-than-maximum, partially-concurrent sentencing recommendations to convince the court to accept the plea and the joint recommendations. (And, the particular sentences challenged in this assignment of error were joint recommendations adopted by the trial court, as the only deviation involved the consecutive nature of the ten-month sentence, which is not at issue in this assignment). Although an ineffective assistance of counsel argument was not specified here, the record does not indicate a deficiency in counsel's performance on reaching this tactical decision.

---

[2] We note the case at bar is distinguishable from a case Appellant cites involving the following distinct features: the facts of the offenses were elicited at a jury trial; defense counsel specifically made a merger argument at sentencing; and the trial court made an ambiguous statement about concurrent sentences that suggested some future decision would be made on merger. *See State v. Grove*, 7th Dist. Mahoning No. 18 MA 0145, 2020-Ohio-3622.

**{¶43}** In any event, as set forth above, plain error has not been established. For the various reasons reviewed above, this assignment of error is without merit.

ASSIGNMENT OF ERROR THREE

**{¶44}** Appellant's third assignment of error argues:

"THE TRIAL COURT FAILED TO PROPERLY ADVISE GIVENS THAT A SENTENCE FOR A FELONY CONVICTION MUST BE SERVED CONSECUTIVELY TO A SENTENCE FOR A POST RELEASE CONTROL (PRC) VIOLATION AT HIS PLEA HEARING."

**{¶45}** At the plea hearing in 22 CR 5 as related to fourth-degree felony improper handling of a firearm in a motor vehicle, the trial court informed Appellant he could be placed on up to two years of post-release control at the option of the parole board. *See* R.C. 2967.28(C). The court also explained the parole board's ability to impose a prison term of up to one-half of his originally stated prison term for a violation of post-release control. In dispute here is the court's subsequent advisement: "In addition to that, if a period of Post-Release Control was imposed and you violate it by committing a separate felony offense, you can be punished separately for that felony offense." (4/21/23 Plea Tr. 11).

**{¶46}** At the plea hearing in 22 CR 415, the murder offense was not subject to post-release control due to the statutorily required prison term of 15 years to life. As related to the third-degree felonies (theft of a firearm and tampering with evidence) and the fifth-degree felony (possession of methamphetamine), the court gave the same advisement as in 22 CR 5 on the optional two years of post-release control and on the potential to receive an additional prison term of up to one-half of the originally stated prison term for a violation. As in the appeal from 22 CR 5, Appellant contests the court's subsequent advisement in 22 CR 415: "In addition to that, if you are to violate by committing a separate felony offense, you can be punished separately for that felony offense." (7/10/23 Plea Tr. 17).

**{¶47}** Under R.C. 2929.141(A)(1), *if a court decides to impose a prison term for a violation of post-release control*, then it shall be served consecutively to any prison term imposed for the new felony. Appellant argues the court did not fully advise him of the maximum penalty regarding post-release control because the oral advisement at each

plea hearing did not specifically state a sentence for a future felony committed while on post-release control would be imposed "consecutively" to any prison sentence a court may choose to impose for the post-release control violation where the court instead used the word "separately" when so advising him.

**{¶48}** Pursuant to Crim.R. 11(A)(2)(a), the court accepting a plea of guilty or no contest must address the defendant personally to determine he is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved. Post-release control qualifies as part of the maximum penalty discussed in Crim.R. 11(C)(2)(a). *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22 (finding a complete failure to comply with Crim.R. 11(C)(2)(a) where the defendant was subject to five years of post-release control but the trial court failed to mention the topic).

**{¶49}** It has long been held that a trial court need not strictly comply with the non-constitutional advisements in Crim.R. 11(C)(2)(a), such as the maximum sentence argument at issue herein; rather, substantial compliance with non-constitutional advisements is sufficient to avoid a finding of error. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14. The reviewing court considers the totality of the circumstances to ascertain whether the defendant subjectively understood the rights waived and the implications of the plea. *Id.* at ¶ 15.

**{¶50}** The traditional rule requires a defendant to demonstrate prejudice when seeking vacation of a plea based on a non-compliant advisement about the non-constitutional aspects of Crim.R. 11(C). *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 13-17. In evaluating prejudice, we ask whether the plea would have otherwise been made. *Id.* at ¶ 16. The record must show the defendant would not have pled guilty but for the lacking advisement. *Id.* at ¶ 23-24 (upholding the plea where there was "nothing in the record indicating [the defendant] would not have entered his plea had he been more thoroughly informed of the details" of the contested item). There is an exception to the prejudice requirement where the trial court completely fails to comply with a non-constitutional aspect of Crim.R. 11(C). *Id.* at ¶ 15, citing *Sarkozy*, 117 Ohio St.3d 86 at ¶ 22 (finding a complete failure where the court did not orally mention post-release control at all).

**{¶51}** Appellant relies on an Eighth District case finding a complete failure to comply with the necessary maximum sentence advisement where the trial court said the defendant's pending sentence for the new felony "may" be run consecutively to the pending sentence for his post-release control violation. *State v. Nix*, 8th Dist. Cuyahoga No. 106894, 2019-Ohio-3886, ¶ 8, 18. However, in *Nix*, the defendant *was, at that moment, pleading guilty to the new felony while on post-release control* and was about to be sentenced for both after the plea hearing at issue. *Id.* at ¶ 2, 18.

**{¶52}** Those facts were also present in the Supreme Court's *Bishop* (plurality) opinion relied on by the *Nix* court. *See id.* at ¶ 16 (stating the question was "whether an advisement about the court's ability to impose sentence under R.C. 2929.141(A)(1) was necessary when a defendant on post-release control pleads guilty or no contest to new felony charges"), citing *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 21. The certified question answered affirmatively in *Bishop* was whether "a criminal defendant on [post-release control] for a prior felony must be advised, during his plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141 to terminate his existing [post-release control] and to impose a consecutive prison sentence for the [post-release control] violation." (Brackets sic.) *Bishop*, 156 Ohio St.3d 156 at ¶ 1. In both cases, there was a complete failure to comply with the advisement on the maximum sentence because the defendant was subject to mandatory consecutive sentences on the plea he was entering.[3]

**{¶53}** Distinguishably, the case at bar does not involve a defendant pleading to a new felony offense committed while on post-release control. Rather, the trial court was providing information about a future felony that may never occur (while on optional post-release control that was fully explained on the offenses to which it was pertinent). Therefore, the case law cited by Appellant does not support his position.

**{¶54}** That is, the *Nix* case Appellant relies on does not hold that all pleading defendants must be advised that if they are subsequently placed on post-release control

---

[3] In formulating the distinct ruling for cases where a defendant is pleading to a new felony committed while on post-release control, the Supreme Court maintained its prior ruling that a trial court is not required to advise the pleading defendant of the maximum available sentences when totaled on all offenses or of the option to run sentences consecutively. *Bishop*, 156 Ohio St.3d 156 at ¶ 14, citing *State v. Johnson*, 40 Ohio St.3d 130, 133, 532 N.E.2d 1295 (1988).

and if they commit a felony while still on post-release control and if a court imposes an additional prison term for the post-release control violation, then the sentence for the new felony must be consecutive to the sentence on the violation. In fact, the Eighth District subsequently pointed out: "any advisement that a sentence for the violation of post-release control arising from the commission of a new felony will be served consecutively to the sentence for the new felony offense *is only required during the plea hearing for the new felony offense.*" (Emphasis added.) *State v. Sullivan*, 8th Dist. Cuyahoga No. 111621, 2023-Ohio-1036, ¶ 19. The court distinguished its *Nix* case and the Supreme Court's *Bishop* case, as we did above. *Id.* at ¶ 19-20 (rejecting the argument that the trial court failed to advise of the maximum penalty for the current offense when the court said a prison term for a post-release control violation "could be" imposed consecutively to the sentence for a new felony offense).

{¶55} Here, the court informed Appellant of the discretionary nature and term of post-release control, explained the available punishments for violations, and mentioned that he can be punished separately for a new felony committed while on post-release control. The omitted item complained of by Appellant was not a requirement for explaining the maximum sentence *in the case before the court*.

{¶56} Even assuming the oral colloquy was incomplete, it was not a "complete failure" to advise Appellant about the maximum penalty imposable *in the case at bar*. As *Bishop* observed, "If the trial judge partially complied, e.g., by mentioning mandatory post-release control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Bishop*, 156 Ohio St.3d 156 at ¶ 19. Accordingly, even assuming arguendo full compliance was lacking, a demonstration of prejudice would be required.

{¶57} Notably, the record demonstrates the trial court's oral colloquy was not Appellant's only source of pertinent information on the subject now raised. Written plea forms can be reviewed in ascertaining whether a non-constitutional issue was prejudicial. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 16 (where the trial court did not orally advise the defendant the guilty plea constituted a complete admission of his guilt, the Supreme Court upheld the plea upon viewing the written plea form and

the oral assurances that Appellant understood the content of the form and was aware of the rights he was waiving).

{¶58} In 22 CR 415, before the trial court discussed post-release control at the plea hearing, defense counsel specifically said he reviewed with Appellant the felony plea agreement and an entry entitled, "Judicial Advice to Defendant"; counsel then asked the court to accept the forms. (7/10/23 Plea Tr. 5). In 22 CR 5, defense counsel generally said he reviewed the forms with Appellant and asked the court to accept them. (4/21/23 Plea Tr. 4).

{¶59} In both cases, the judgment entry providing judicial advice to the defendant specifically reviewed the penalties for a future post-release control violation, including for committing a new felony while on post-release control, and then explicitly explained: "This prison term must be served consecutively to any term imposed for the new felony you are convicted of committing." (7/12/23 J.E. in 22 CR 415, signed by the court on 7/10/23); (4/21/23 J.E. in 22 CR 5). This quote contains the advice Appellant says was missing from the plea hearing (because the court said the sentence for the new felony could be imposed "separately from" the post-release control violation sentence instead of "consecutively to" it).

{¶60} In a separate filing ("Defendant's Response to Court"), Appellant swore he understood everything in the entry providing judicial advice to the defendant. (7/12/23 Def.Resp. to Ct. in 22 CR 415, sworn to and signed by Appellant as confirmed by defense counsel's signature on July 10, 2023); (4/21/23 Def.Resp. to Ct. in 22 CR 5, sworn to and signed by Appellant as confirmed by defense counsel's signature on April 21, 2023). Appellant then subsequently reaffirmed his understanding of these items during the plea colloquy conducted by the trial court. The court specifically discussed the plea agreement, the judicial advice entry, and the filed document containing the defendant's response to the court. Upon the court's inquiry, Appellant said he reviewed the contents of these forms with counsel and understood them, while acknowledging he signed the plea agreement and the defendant's response to the court. (4/12/23 Plea Tr. 6-7); (7/10/23 Plea Tr. 8-9).

{¶61} Considering the totality of the circumstances, the record does not demonstrate prejudice from the trial court's use of the word "separately" instead of

"consecutively" during the oral plea colloquy (when mentioning future violations of post-release control by committing a new felony if he is placed on post-release control in the future). There is no indication Appellant would not have pled guilty had this oral advisement been made. Accordingly, this assignment of error is overruled.

**{¶62}** For the foregoing reasons, Appellant's convictions are upheld, and the trial court's judgments in both cases are affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 23 CO 0039, 23 CO 0040

[Cite as *State v. Givens*, 2024-Ohio-2563.]

---

For the reasons stated in the Opinion rendered herein, the Appellant's convictions are upheld and the final judgment and order of this Court is that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed for both cases.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**