[Cite as *State v. Pullom*, 2025-Ohio-2640.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

ANDRE M. PULLOM,

    DEFENDANT-APPELLANT.

CASE NO. 13-24-35

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Trial Court No. 24 CR 0099

Judgment Affirmed

Date of Decision:  July 28, 2025

APPEARANCES:

    *John C. Filkins* for Appellant

    *Stephanie J. Kiser* for Appellee

Case No. 13-24-35

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Andre M. Pullom ("Pullom"), appeals the August 22, 2024 judgment entry of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On April 4, 2024, the Seneca County Grand Jury indicted Pullom on a single count of failure to appear in violation of R.C. 2937.29 and 2937.99(A), (B), a fourth-degree felony. On April 10, 2024, Pullom appeared for arraignment and entered a plea of not guilty.

{¶3} The case proceeded to a two-day jury trial on July 22, 2024. On July 23, 2024, the jury found Pullom guilty of failure to appear.

{¶4} On August 20, 2024, the trial court sentenced Pullom to a prison term of 15 months.[1]

{¶5} Pullom filed his notice of appeal on September 3, 2024. Pullom raises four assignments of error for our review. For ease of discussion, we will begin by discussing Pullom's first and third assignments of error together, followed by his second assignment of error, then his fourth assignment of error.

**First Assignment of Error**

**The Trial Court Erred When It Did Not Grant Appellant's Criminal Rule 29 Motion For Acquittal At The End Of The Appellee's Case-In-Chief For The Appellee Failed To Establish That Appellant Was Notified Of The Hearing To Which Appellant Was Charged With Having Failed To Appear.**

---

[1] The trial court's judgment entry of sentence was filed on August 22, 2024.

**Third Assignment of Error**

**The Verdict Was Against The Manifest Weight of The Evidence
And Must Be Reversed.**

{¶6} In his first assignment of error, Pullom argues that the trial court should have granted his Crim.R. 29(A) motion for acquittal at the close of the State's case-in-chief because the State presented insufficient evidence to show that he was notified of the hearing date. In his third assignment of error, Pullom argues that his failure-to-appear conviction is against the manifest weight of the evidence.

*Standard of Review*

{¶7} Under Crim.R. 29(A), a court "shall order the entry of a judgment of acquittal of one or more offenses . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." Consequently, "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶8} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds, State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly,

"[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.), citing *State v. Williams*, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶9} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,'

should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Sufficiency-of-the-Evidence Analysis*

{¶10} As an initial matter, we note that Pullom moved for a judgment of acquittal under Crim.R. 29(A) at the close of the State's case-in-chief, which the trial court denied. Thereafter, Pullom presented evidence in his defense, but failed to renew his Crim.R. 29(A) motion at the close of all the evidence. Thus, according to this court's precedent, Pullom has waived all but plain error. *See State v. Hurley*, 2014-Ohio-2716, ¶ 38 (3d Dist.) (noting that reviewing a sufficiency-of-the-evidence argument for prejudicial error or plain error is academic because a conviction based on legally insufficient evidence is a denial of due process and warrants reversal). Accordingly, we will proceed to determine whether the State presented sufficient evidence during its case-in-chief to support Pullom's conviction.

{¶11} Pullom was convicted of failure to appear in violation of R.C. 2937.29 and 2937.99(A), (B). In its entirety, R.C. 2937.29 provides:

> When from all the circumstances the court is of the opinion that the accused will appear as required, either before or after conviction, the accused may be released on his own recognizance. A failure to appear as required by such recognizance shall constitute an offense subject to the penalty provided in section 2937.99 of the Revised Code.

Moreover, the relevant provisions of R.C. 2937.99 state:

(A) No person shall fail to appear as required, after having been released pursuant to section 2937.29 of the Revised Code. Whoever violates this section is guilty of failure to appear and shall be punished as set forth in division (B) . . . of this section.

(B) If the release was in connection with a felony charge or pending appeal after conviction of a felony, failure to appear is a felony of the fourth degree.

{¶12} This court has recognized that a violation of R.C. 2937.29 is not a strict-liability offense, and that proof of "recklessly" mens rea is an element of a failure-to-appear offense. *State v. Cox*, 2022-Ohio-571, ¶ 12 (3d Dist.). *See also State v. Connin,* 2021-Ohio-4445, ¶ 8 (6th Dist.). "Recklessly" is defined as follows:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). Thus, the State was required to prove beyond a reasonable doubt that Pullom (1) was released on his own recognizance, and (2) *recklessly* failed to appear as required by the court. *Cox* at ¶ 13; *Connin* at ¶ 9.

{¶13} Here, Pullom argues that the State presented insufficient evidence during its case-in-chief to support Pullom's failure-to-appear conviction. Specifically, Pullom argues that the State failed to prove "the element of notice" by establishing beyond a reasonable doubt that he "knew or should have known of the

hearing date." (Appellant's Brief at 10). Pullom's interpretation of R.C. 2937.29 and 2937.99 would require the State to prove that he acted knowingly. *See* R.C. 2901.22(B). But the State only had to prove that Pullom *recklessly* failed to appear on March 26, 2024. *See Connin* at ¶ 11 (rejecting appellant's argument that he was entitled to "actual notice" of the missed sentencing dates because "recklessly, not knowingly, mens rea is required by R.C. 2937.29"). *See also State v. Hicks,* 2009-Ohio-3115, ¶ 31-32 (4th Dist.) (concluding that the prosecution did not have to prove that the defendant knowingly missed the trial date; recklessness is the culpable mental state for failure to appear). *But see State v. Huckleby,* 2018-Ohio-4438, ¶ 13 (4th Dist.) (determining that "the prosecution had the burden to actually produce evidence to prove the fact that appellant had been informed of the date and time of the trial").

{¶14} In its case-in-chief, the State presented the testimony of the trial court's criminal bailiff. The bailiff testified that she manages the paperwork in criminal cases and is present at all scheduled hearings. According to the bailiff's testimony, Pullom was charged with possession of cocaine, a fourth-degree felony.[2] On January 19, 2024, Pullom was released on his own recognizance after he signed a bond with conditions. One of the conditions required that Pullom appear at all scheduled hearings.

---

[2] We note that the record on appeal in this case does not include the record from Pullom's underlying possession-of-cocaine case.

{¶15} The bailiff further testified that a hearing was scheduled for March 26, 2024 to consider Pullom's motion to suppress and for the trial court—on its own motion—to reconsider Pullom's bond. The bailiff testified that Pullom was required to appear at the scheduled hearing. The bailiff stated that she was present in court on March 26, 2024, and that the State and counsel for Pullom were also present. The bailiff testified that Pullom was not present in court on March 26, 2024, and no motion to continue the hearing had been filed. The bailiff further testified that a bench warrant was issued due to Pullom's failure to appear.

{¶16} In addition to the bailiff's testimony, the State sought the admission of State's Exhibit 1, a certified copy of the executed recognizance bond filed in Pullom's underlying possession-of-cocaine case. Bond condition number four requires, "Defendant shall make and keep all appointments with their attorney." (State's Exhibit 1). Moreover, bond condition number five mandates, "Defendant shall appear for all scheduled Court hearings." (*Id.*). The State also sought the admission of State's Exhibit 2, a certified copy of the trial court's judgment entry ordering a bench warrant to issue. The judgment entry states that Pullom "was not present" in court on March 26, 2024. (State's Exhibit 2). The judgment entry further states, "After hearing from both counsel, the Court finds there is probable cause to issue a Bench Warrant for the Defendant's failure to appear." (*Id.*).

{¶17} Following the trial court's admission of State's Exhibits 1 and 2, the State rested its case. Pullom then moved for a judgment of acquittal under Crim.R.

29(A). Pullom argued, "There's been no testimony presented to establish that [Pullom] had notice of the hearing on March 26th, 2024." (July 22, 2024 Tr. at 114). Pullom further argued that the State failed to present evidence that he "knew or should have known of the hearing on March 26th, 2024." (*Id.* at 115-116). *See State v. King*, 2023-Ohio-875, ¶ 69 (12th Dist.) ("To convict a person for failure to appear under R.C. 2937.99, the state 'must prove that the defendant knew, or should have known, of the hearing date.'"), quoting *Huckleby,* 2018-Ohio-4438, at ¶ 12 (4th Dist.).

**{¶18}** In response, the State argued that the trial court "provides notice to defendants through their attorney." (July 22, 2024 Tr. at 116-117). *See* Seneca C.P., Gen.Div., Loc.R. 10; Crim.R. 49. The State further argued that the trial court's bailiff testified that a hearing was scheduled for March 26, 2024, and that Pullom should have known about the hearing through communication with his counsel— who was present in court on that date. After considering the arguments of counsel, the trial court denied Pullom's motion.

**{¶19}** Viewing the evidence presented in the State's case-in-chief in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the offense of failure to appear proven beyond a reasonable doubt. That is, the State presented sufficient evidence that a rational trier of fact could have found that Pullom was released on his own recognizance in his underlying possession-of-cocaine case, and that he recklessly failed to appear as

required by the court because his attorney was present and he was not. In other words, the evidence presented "in a light most favorable to the prosecution" suggests that since Pullom's attorney was present, he should have been too. *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus. Despite Pullom's arguments to the contrary, the State did not have to prove that Pullom had "actual notice" of the scheduled hearing. *See Connin,* 2021-Ohio-4445, at ¶ 11 (6th Dist.); *Hicks*, 2009-Ohio-3115, at ¶ 32 (4th Dist.). Consequently, Pullom's failure-to-appear conviction is based on sufficient evidence. Accordingly, the trial court did not err by denying Pullom's Crim.R. 29(A) motion for acquittal.

*Manifest-Weight-of-the-Evidence Analysis*

{¶20} Having concluded that the State presented sufficient evidence during its case-in-chief to support Pullom's failure-to-appear conviction, we next address his argument that the conviction is against the manifest weight of the evidence. Specifically, Pullom argues that his failure-to-appear conviction is against the manifest weight of the evidence because he testified that he "did not know about the hearing on March 26, 2024" and "[i]f he had known about the hearing—he would have attended same." (Appellant's Brief at 16).

{¶21} Pullom testified in his own defense at trial. On direct examination, Pullom admitted that he has a long history of drug abuse and convictions for drug offenses. Pullom testified that, in early February of 2024, he was regularly using cocaine and sought treatment for his addiction. On March 24, 2024, Pullom was

notified that a bed was available at a detox facility in Maumee, Ohio. Pullom was unable to drive himself to Maumee since he "was high as a hill." (July 23, 2024 Tr. at 135). Pullom testified, "I didn't want to drive up there like that." (*Id.*). Pullom further testified that he continued to use "just cocaine and meth" over the next two days. (*Id.* at 136). On March 26, 2024, Pullom was driven to the detox facility and he stayed there for one week. When asked about his failure to appear at the scheduled hearing, Pullom testified that he "wasn't aware of it" and that he did not receive notice of the hearing. (*Id.* at 140). Pullom further testified that he would have attended the hearing had he known about it because "[i]t was beneficial to me." (*Id.* at 141). Pullom explained, "It was . . . my motion to suppress. It was to get my case kicked out of court." (*Id.*).

{¶22} On cross-examination, Pullom acknowledged that one of his bond conditions required that he stay in contact with his attorney. Over the objection of Pullom's counsel, Pullom was asked if he stayed in contact with his attorney throughout the underlying possession-of-cocaine case.[3] Pullom answered, "Yeah. Yeah." (*Id.* at 148). Pullom was then asked if his attorney notified him of court appearances and hearings. Pullom responded, "Typically." (*Id.* at 149). When asked if his attorney notified him of the hearing scheduled for March 26, 2024, Pullom responded, "I don't think so." (*Id.*). When pressed for clarification, Pullom

---

[3] Pullom's argument regarding the attorney-client privilege is addressed in his second assignment of error, below.

stated, "I was high most of the time. . . . He may have." (*Id.*). Pullom further testified to knowing that a motion to suppress had been filed on his behalf and that a hearing "was soon." (*Id.* at 150). When asked if he notified his attorney of his plan to enter a detox facility on the same day as the scheduled hearing, Pullom stated, "I notified him two days later when I was sober." (*Id.* at 153).

{¶23} After examining the entire record, we conclude that the jury did not lose its way and create a manifest miscarriage of justice such that Pullom's failure-to-appear conviction must be reversed and a new trial ordered. Even though Pullom testified that he would have appeared at the scheduled hearing had he known about it, the State did not have to prove that Pullom *knowingly* missed the scheduled hearing—rather *recklessness* is the culpable mental state for failure to appear. *See Cox,* 2022-Ohio-571, at ¶ 12-13 (3d Dist.); *Connin,* 2021-Ohio-4445, at ¶ 8-9 (6th Dist.). Moreover, the jury was free to weigh the evidence and infer that Pullom, with heedless indifference to the consequences of being "high most of the time" and not staying in contact with his attorney, disregarded a substantial and unjustifiable risk that his conduct would likely result in a missed court appearance. (July 23, 2024 Tr. at 149). Accordingly, Pullom's failure-to-appear conviction is not against the manifest weight of the evidence.

{¶24} Pullom's first and third assignments of error are overruled.

-12-

## Second Assignment of Error

**The Trial Court Erred In Permitting The Appellee To Question The Appellant As To Communications Protected By The Attorney-Client Privilege.**

{¶25} In his second assignment of error, Pullom argues that his failure-to-appear conviction should be reversed because the trial court erred by allowing the State to question him regarding whether his trial counsel notified him of the hearing date. Pullom asserts that communications with his trial counsel are protected by the attorney-client privilege.

### *Standard of Review*

{¶26} "It is well settled that '[t]he trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002), quoting *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### *Analysis*

{¶27} "The attorney-client privilege is governed by statute, R.C. 2317.02(A), and for situations that are not addressed in the statute, the privilege is governed by the common law." *State v. Brunson*, 2022-Ohio-4299, ¶ 28. Even though the express language of R.C. 2317.02(A) addresses only when an *attorney* may testify

on issues covered by the attorney-client privilege—and does not discuss the client—the Supreme Court of Ohio has held that the statute "'provides the exclusive means by which privileged communications directly between an attorney and a client can be waived.'" *Brunson* at ¶ 29, quoting *Jackson v. Greger*, 2006-Ohio-4968, paragraph one of the syllabus. Thus,

> R.C. 2317.02(A) applies to all direct communications between a client and his or her attorney, and the attorney-client privilege can be waived only when (1) the client has provided express consent to waive the privilege or (2) the client has voluntarily revealed the substance of the attorney-client communications in a nonprivileged context, *such as by voluntarily testifying on the same subject.*

(Emphasis added.) *Brunson* at ¶ 29.

{¶28} Here, Pullom testified on direct examination that he was not notified of the hearing date. Specifically, when asked by trial counsel if he knew that there was a hearing scheduled for March 26, 2024 at 9:30 a.m., Pullom answered, "I wasn't aware of it." (July 23, 2024 Tr. at 140). Pullom was then asked, "Had you received notice of that hearing?" (*Id.*). Pullom stated, "No." (*Id.*). Pullom further stated that, had he been notified of the hearing date, he would have appeared in court.

{¶29} We conclude that Pullom waived the attorney-client privilege by voluntarily testifying on the subject of whether he was notified of the hearing date. Pullom's testimony opened the door for the State to cross-examine him on whether his trial counsel notified him of the hearing date. *See* Crim.R. 611(B) (stating that

-14-

the scope of "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility"). Furthermore, Pullom voluntarily testified on direct examination that he entered a detox facility on March 26, 2024—the day of the scheduled hearing. Accordingly, the trial court did not abuse its discretion by allowing the State to cross-examine Pullom on whether his trial counsel notified him of the hearing date. Moreover, the trial court did not abuse its discretion by allowing the State to cross-examine Pullom on whether he notified his trial counsel of his plan to enter a detox facility on the same day as the scheduled hearing.

{¶30} Pullom's second assignment of error is overruled.

## Fourth Assignment of Error

**The Trial Court Erred In Imposing An Actual Prison Term Rather Than Community Control Sanctions Given The Fact That The Trial Court Had Just Granted The Appellant Community Control Sanctions On The Underlying Offense For Which The Appellee Claimed The Appellant Had Failed To Appear.**

{¶31} In his third assignment of error, Pullom argues that the trial court erred by imposing a 15-month prison term. Pullom requests that his sentence be vacated and that he be sentenced to community control sanctions.

### *Standard of Review*

{¶32} Under R.C. 2953.08(G)(2), an appellate court may vacate or modify a felony sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶33} "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 2015-Ohio-4225, ¶ 9 (3d Dist.), quoting *State v. Noble*, 2014-Ohio-5485, ¶ 9 (3d Dist.). "A sentence imposed within the statutory range is generally valid so long as the trial court considered the applicable statutory policies that apply to every felony sentencing, including those contained in R.C. 2929.11, and the sentencing factors of 2929.12." *State v. Wyne*, 2022-Ohio-4068, ¶ 18 (3d Dist.).

{¶34} In relevant part, R.C. 2929.11 provides that

> [t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.

R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs the sentencing court to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

R.C. 2929.11(A). "Meanwhile, R.C. 2929.11(B) states that felony sentences must be 'commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim' and also be consistent with sentences imposed in similar cases." *Smith* at ¶ 10, quoting R.C. 2929.11(B).

{¶35} "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10. "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12." *Id.* at ¶ 15, quoting *State v. Brimacombe*, 2011-Ohio-5032, ¶ 18 (6th Dist.).

{¶36} In this case, the trial court sentenced Pullom to a prison term of 15 months for failure to appear, a fourth-degree felony. "For a felony of the fourth degree, the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months." R.C. 2929.14(A)(4). Thus, the trial court sentenced Pullom within the permissible statutory range for a fourth-degree felony.

{¶37} In addition, the record reflects that the trial court considered R.C. 2929.11 and 2929.12 when fashioning Pullom's sentence. At the sentencing hearing, the trial court stated that it considered the purposes and principles of felony sentencing. The trial court noted that Pullom failed to appear for a scheduled hearing, failed to communicate with his trial counsel, and continued to use drugs "in

-17-

direct violation of the own recognizance bond." (Aug. 20, 2024 Tr. at 22). The trial court further noted that Pullom previously had served a prison term. *See* R.C. 2929.13(B)(1)(b)(ix).

**{¶38}** After considering the foregoing, the trial court determined that Pullom is not amenable to community control and that a prison sentence is consistent with the purposes of R.C. 2929.11. The trial court found that community control sanctions would demean the seriousness of Pullom's conduct and that a prison sentence is commensurate with the seriousness of his conduct. The trial court further found that a prison sentence does not place an unnecessary burden on state governmental resources; that Pullom's risk of recidivism is likely; and that the need to deter others from similar conduct and to protect the public necessitates Pullom's imprisonment.

**{¶39}** Based on our review of the record, we conclude the trial court did not err in sentencing Pullom to a prison term of 15 months for failure to appear, a fourth-degree felony. As detailed above, the trial court considered the seriousness of Pullom's conduct and the likelihood of his recidivism. The trial court also considered that the failure-to-appear offense was committed while Pullom was released on a recognizance bond. *See* R.C. 2929.13(B)(1)(b)(iii), (x). Therefore, because Pullom's sentence is within the permissible statutory range and the trial court properly considered R.C. 2929.11 and 2929.12, the sentence is valid and not contrary to law. *See Wyne*, 2022-Ohio-4068, at ¶ 18 (3d Dist.).

{¶40} Pullom's fourth assignment of error is overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

Case No. 13-24-35

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

William R. Zimmerman, Judge

Juergen A. Waldick, Judge

John R. Willamowski, Judge

DATED:
/hls

-20-